BERNARD LORENTZ, WILLIAM H. RITTLER, and GEORGE J. BECHTEL, Co-partners, &c. *vs.* LAZARUS ROBINSON. SAME *vs.* SAME.

*Master and Servant—Instructions based on the Absence of Evidence—Rules of Court—Practice in the Court of Appeals.*

If injury results to the servant from the direct act or negligence of the master, as where he is personally present superintending the work and giving orders, he is answerable in damages to the same extent as if the relation of master and servant did not exist.

Instructions based on the absence of evidence, cannot be granted if there be any evidence legally sufficient to warrant the jury in finding or inferring the facts in controversy, and they always assume the jury will, as is their right, believe such evidence and reject all opposing testimony.

Where by the rules of Court the introduction of additional prayers, after the jury have been instructed upon those previously offered and argued, is prohibited, unless by permission of the Court, the refusal of the Court to receive such additional prayers, is not the subject of review on appeal.

Nor is it within the power of the Court of Appeals to review the action of the Court below in dismissing a petition praying the Court to have the contents of these additional prayers (which were mislaid or lost) ascertained and accurately set forth.

APPEALS from the Court of Common Pleas.

The case is stated in the opinion of the Court.

*First Exception.*—This exception was taken to the granting of the plaintiff's prayer, and the rejection of the first, second, third, fourth, and fifth prayers of the defendants. The third prayer of the defendants, which alone need be inserted, is as follows :

3. If the jury shall find from the evidence, that the plaintiff got upon an elevator belonging to the defendants, without any orders to do so from the defendant, Rittler, he took upon himself the risk of his conduct, and contributed to the injury which he sustained, and cannot recover in this action, and the verdict must be for the defendants.

*Second Exception.*—After the rulings of the Court had been made, as stated in the first bill of exceptions, the defendants prayed the Court to give the following instructions:

(NOTE.—In this second bill of exceptions it is written here, "[Here insert defendants' eighth and ninth prayers,]" but the clerk is unable to insert them, because they cannot be found.)

But the Court (BROWN, J.,) declined to consider the said prayers, and each of them, because after all the testimony intended to be offered by plaintiff and defendants had been introduced, and the Court had been furnished with all the prayers which the parties respectively proposed to found thereon, and these prayers had been argued together, and after the Court had taken a night to consider them, and had passed upon the prayers, and had given the prayers granted to the jury, as contemplated by Rule Number 34 of the conduct of business in said Court, which is as follows, to wit:

"34. After all the testimony intended to be offered by plaintiff and defendant shall be introduced, the Court will expect to be furnished with all the prayers which the parties respectively may propose to found thereon. These prayers shall be argued in connection together, unless otherwise directed by the Court—the plaintiff, if he shall have submitted any material proposition, not admitted by the defendant, being entitled to open and conclude on the whole. And the Court, on the whole case, will give such

instruction as may appear requisite to place the cause fully before the jury."

The Court, in the exercise of its discretion, thought it right and proper to decline to receive any additional prayers, according to the terms of Rule No. 35, for the conduct of business in said Court, which is as follows, to wit:

"35. After the jury shall have been so charged or instructed, as contemplated by the preceding rule, no additional prayer will be received, nor additional evidence given to the jury, unless by permission of the Court."

The defendants excepted, and afterwards filed in said cause, the following petition:

ROBINSON<br>
*vs.*<br>
LORENTZ & RITTLER.

In the Court of Common Pleas.

To the Honorable, the Judge of the
                    Court of Common Pleas:

The petition of the defendants respectfully shows to your honor that they have been informed that prayers numbered eight and nine, mentioned in the second bill of exceptions, which were offered at the trial and placed in the hands of the Judge by counsel for defendants, have been mislaid.

These petitioners respectfully pray the Court to cause diligent search to be made for said prayers, and if they cannot be found, they pray the Court to cause the substance and effect of said prayers, or the exact language of the same, if it can be ascertained, to be inserted in the second bill of exceptions, and they pray the Court to make such inquiry by the testimony of witnesses and by other means satisfactory to the Court as may be requisite to refresh the memory of the Court as to the con-

tents of said prayers, so that the same may be accurately set forth and justice be done in the premises.

This petition was dismissed by the Court.

The verdict and judgment being in favor of the plaintiff, the defendants appealed.

The cause was argued before ALVEY, C. J., YELLOTT, MILLER, ROBINSON, and IRVING, J.

*R. R. Battee,* and *W. S. Bryan, Jr.,* for the appellants.

*Henry V. D. Johns,* and *Chew Snebly,* for the appellee.

MILLER, J., delivered the opinion of the Court.

In this case suit was brought by an employé against his employers to recover damages for personal injuries sustained by him while in their service.

The defendants, Lorentz, Rittler and Bechtel, were co-partners, and owned a large building in the City of. Baltimore, in which they manufactured fertilizers. In this building there was a steam elevator running from the first to the third floor of the factory, by means of which materials used in the business were hoisted or lowered. This elevator had an automatic arrangement so adjusted that with a ton weight on the platform it would stop at the third floor, and with a greater weight a little below, and with a less weight a little above this floor. It could also be stopped in the usual way by pulling the check-chain or rope. The plaintiff had been in the service of the defendants about a year, and had at one time worked at the elevator, but at the time of the accident he was working as a hand in the mixing-room on the third floor of the building.

The declaration charges that on the 25th of June, 1881, Rittler, one of the defendants, went upon this elevator to be carried from the first to the third floor, and while being

so carried, he endeavored to stop and control it, but could not, and was being carried up towards the roof of the factory, whereby he was in danger of sustaining bodily injury, and the property of the defendants was in danger of being destroyed ; that the elevator was not under control, because its machinery was out of order, and while he was thus upon it, and when it was about on a level with the third floor and uncontrollable, and therefore a place of danger, the said Rittler well knowing the elevator was out of order and uncontrollable, and that it was being carried up by steam power towards the roof and towards the machinery and gearing, which it would come in contact with in its upward course, and that it was a place of great bodily exposure and danger, wrongfully, negligently, and in default of his duty, ordered and directed the plaintiff to come from the third floor of the factory and' stop said elevator ; and the plaintiff says he was ignorant of the fact that the elevator was out of order and uncontrollable, and that he obeyed the direction and order of Rittler, and stepped from the floor upon the elevator, and as he did so, Rittler jumped from the elevator to the floor unharmed, but instantly after he thus left, plaintiff discovered the elevator to be uncontrollable, and it ascended rapidly and struck with such violence and jar upon the machinery and structures above that the appliances which enabled the power to support the elevator gave way, and it was instantly precipitated to the ground, carrying the plaintiff down with it, by means whereof he was severely bruised, wounded, lamed and crippled; and he avers the defendants did not use due care in reference to said elevator, and that he himself did use due care.

The case was tried before a jury upon issue joined on the plea of not guilty. At the trial two exceptions were taken by the defendants, and the verdict and judgment being against them, they have appealed.

The first exception is to the granting of the plaintiff's prayer, and the rejection of the first, second, third, fourth,

and fifth prayers of the defendants. By the granting of the plaintiff's prayer the jury were instructed that if they find from the evidence that the defendants possessed and occupied a building in the City of Baltimore, in which, as copartners, they carried on business as manufacturers of fertilizers, and that in said building there was an elevator propelled by steam, and that on the 25th of June, 1881, this elevator was being used by Rittler, one of the defendants, while engaged in the business of the firm, and that it was not in safe and proper condition for use, and was a place of danger, and that its condition in this respect was known to Rittler at the time, or could, by the exercise of ordinary and reasonable care and prudence, have been known by him or his firm; and shall find that when said elevator was at or about the third floor of the factory, said Rittler called the plaintiff, Robinson, one of the employés of said firm, to come and stop said elevator in its upward course, and shall find that the plaintiff was ignorant of the fact that the elevator was not in safe and proper condition for use, and that he obeyed the order of his employer, and went upon the elevator for the purpose of controlling it, and that as the plaintiff did so, the said Rittler stepped from the elevator into a place of safety, and escaped unharmed, but that the elevator instantly was jarred or subjected to violence, and gave way and fell to the first floor, carrying the plaintiff down with it, bruising, wounding, and crippling him, as testified to by the witnesses, and shall find that the plaintiff, at the time he obeyed said order of his employer and sustained said injuries, acted with the care which a prudent man might reasonably have been expected to exercise under the circumstances of the case, then the plaintiff is entitled to recover damages against the defendants for the injuries so sustained.

Upon the assumption that there was evidence in the case to justify the jury in finding the facts set out in this prayer, there can be no question as to the right of the plaintiff to

recover. If injury results to the servant from the direct act or negligence of the master, as where he is personally present superintending the work and giving orders, he is answerable for the damages to the same extent as if the relation of master and servant did not exist. This doctrine is illustrated by cases where the master, without warning him of the danger, orders his servant into a situation which the master knows, and the servant does not know, to be dangerous, and the latter obeys and is thereby injured. 2 *Thompson on Negligence,* 974, 975; *Wharton on Negligence,* sec. 210; *Wood's Law of Master and Servant,* sec. 414; *Baxter vs. Roberts,* 44 *California,* 187; *Strahlendorf vs. Rosenthal,* 30 *Wisconsin,* 674; *Davies vs. England,* 10 *Jurist, N. S.,* 1235. If then, as the prayer states, Rittler knew the elevator was out of order and unmanageable when he called the plaintiff to come and stop it in its upward course, and the plaintiff did not know of this unsafe condition of the machine, and in obeying the order of his master, which necessarily required prompt and decisive action, acted with the care which a prudent man might reasonably have been expected to act under the circumstances, then upon every principle of justice and sound reason, the master is liable for the injury the servant sustained in consequence of such obedience to his order. It was negligence on his part to give the order without warning the plaintiff of the perilous character of the service required of him.

But the defendants by their first, second, and fourth prayers asked the Court to instruct the jury in effect, that there was no evidence that Rittler ordered the plaintiff to come upon the elevator at the time of the accident or that he knew that it was at that time a place of danger. Instructions of this character cannot be granted if there be any evidence legally sufficient to warrant the jury in finding or inferring the facts in controversy, and they always assume the jury will, as is their right, believe such evi-

dence and reject all opposing testimony.   Now the plaintiff in his testimony swears that Rittler called him *to come and stop the hoist;* that he obeyed this order and ran towards the elevator; that there was a lot of wheelbarrows near the elevator which prevented his approach to the check rope and chains of the elevator by the floor of the factory; that when he looked at the elevator its platform was about four inches above the third floor and was ascending; that Rittler was on the elevator *pulling at the check rope trying to stop it;* that he jumped on the platform and took hold of the check rope to stop the hoist, and as he did so Rittler stepped off on to the floor unharmed, and almost immediately thereafter he felt a jar, and the elevator instantly fell carrying him down with it; and that when he tried to stop the ascent of the elevator by pulling the check rope he found it would not stop.   And on cross-examination he said the elevator could usually be stopped by a person standing on the third floor, and that he got on the elevator to stop it on this occasion when Rittler called on him to stop it, because there were wheelbarrows on the third floor in front of the chain, and he could not get to the check rope without stepping on the elevator; that he had himself placed the wheelbarrows where they were near the elevator; that on several previous occasions he had stopped the elevator standing on the third floor; that he had stopped it at least twenty times standing on the floor, and would have done so on this occasion but for the obstruction caused by the wheelbarrows.

This is the account the plaintiff gives of the occurrence, and assuming, as we must in disposing of these prayers, that the jury believed this to be the true version of the affair, and that the conflicting statement of Rittler was inaccurate or untrue, we have no difficulty whatever in saying there was ample testimony to justify them in finding that Rittler not only ordered the plaintiff to come upon the elevator but that he knew at the time that it was a

place of danger.   The facts that he was trying to stop it by pulling the check rope, and that at the same time he called for help by telling the plaintiff to come and stop the hoist, are quite sufficient to warrant the inference that he knew the machine was out of order and unmanageable. It was then ascending and within a few feet of striking the gearing and timbers above, and if he thought at all, as he was bound to do, he must have known that one coming upon the platform at that moment in order to stop the ascending movement would place himself in imminent peril.   It is true he did not, in words, order the plaintiff to step on the platform, but such was plainly the effect of his order in view of the surrounding obstructions on the floor.   The elevator was open on two sides, and he could have seen when he gave the order that the obstruction of the wheelbarrows prevented access to the check rope from the floor, and the necessary effect of such an order given under such circumstances was to require the party obeying to go upon the platform, for in no other way could the check rope, the only means of stopping the ascent, be reached. The fact that the plaintiff himself had placed the wheelbarrows in the position they occupied with reference to the elevator is of no importance, for there is nothing to warrant the inference that he placed them there for the purpose of obstructing access to the check rope, so as to make it more difficult, if not more dangerous for him to obey an order of this character.   There was therefore no error in the rejection of these prayers.

The defendant's fifth prayer denies the plaintiff's right to recover, under the pleadings in the case, because it is not alleged in the declaration that the defendants or either of them ordered the plaintiff to go upon the elevator, but the Court was clearly right in rejecting it.   It is averred in the declaration that Rittler, wrongfully, negligently, and in default of his duty ordered and directed the plaintiff to come from the third floor of the factory and

stop the elevator. It is plain that under this averment the testimony of the plaintiff to which we have referred was admissible.

By the defendants' sixth prayer, which was conceded, the jury were instructed that the plaintiff cannot recover unless they find from the evidence that Rittler, on the occasion of the accident, ordered the plaintiff to stop the hoist; and by their seventh prayer, which was also conceded, the jury were further instructed, that if they find that in stepping on the elevator the plaintiff did not act with the care that might reasonably have been expected from a prudent man, under all the circumstances of the case, then their verdict must be for the defendants. These instructions embrace the legal proposition contained in the defendants' third prayer, and gave them the benefit of all the law they were entitled to.

From the second exception it appears that after the Court had thus ruled upon all the prayers offered on both sides, the defendants offered two additional ones, which the Court declined to consider under its Rules 34 and 35. These rules, which are set out in the record, provide in substance that after all the testimony intended to be offered on both sides is introduced, the Court will expect to be furnished with all the prayers the parties respectively propose to found thereon, and after argument upon the same, the Court, on the whole case, will give such instructions as may appear requisite to place the cause fully before the jury; and after the jury shall have been so charged or instructed no additional prayer will be received, nor additional evidence given to the jury unless by permission of the Court. These rules fully justified the Court in refusing to entertain these prayers, and its ruling in this respect, being in the exercise of its discretion, is not the subject of review by this Court. *United States Telegraph Company vs. Gildersleeve*, 29 *Md.*, 232; *Porter vs. Bowers*, 55 *Md.*, 213; *Bushey vs. Culler*, 26 *Md.*, 534. And for

the same reason it is not within our power to review the
action of the Court in dismissing the petition of the de-
fendants praying the Court to have the contents of these
additional prayers (which were mislaid or lost) ascertained
and accurately set forth.

*Judgment affirmed.*

(Decided 20th December, 1883.)