GULF, COLORADO & SANTA FE RAILWAY CO. v. M. E. DUVALL ET AL.

No. 1001.

1. **Railway Company—Action for Death of Employe—Negligence and Contributory Negligence—Orders of Foreman.**

In an action for damages against a railway company for the death of a section hand, the evidence showed that the section men had stepped off the track to avoid an approaching train; that one of them, other than deceased, had left his iron pick sticking in the middle of the track; that the train was approaching on a straight track, and when about seventy-five yards from the men, the foreman, who was twenty or thirty feet from the track, peremptorily ordered deceased, who was within a few feet of it, to remove the pick; and that in attempting to do so, deceased was struck by the engine; that anyone standing on or near the track and practically in front of the train, could not judge its speed with accuracy, especially if inexperienced, as was the deceased, and that the foreman was experienced in the railroad business. Held, that the verdict for plaintiff was sustained by the evidence in showing negligence on the part of the foreman, and the absence of contributory negligence on the part of deceased.

2. **Same—Charge of Court—Evidence Warranting.**

It was not error for the charge, in such case, to submit whether the pick would have probably caused serious injury to the train, and whether deceased was actuated by a desire to prevent such result in his effort to remove it, although there was no positive testimony that the pick was a dangerous obstruction, or as to the motive actuating deceased in such effort.

3. **Same.**

Nor, in such case, could defendant complain of such instruction, if erroneous, as it was not essential to plaintiff's right to recover that the obstruction really endangered the train, and that deceased was actuated by a desire to prevent

such result, since, under the circumstances of apparent danger he was justifiable in obeying the order of the foreman.

## 4. Same—Charge of Court—Contributory Negligence.

The use, in the charge of the court, of the terms "rash," "reckless," and "contributory negligence," as apparently synonymous with each other, is not reversible error, where the charge, taken as an entirety, correctly defines contributory negligence with reference to the facts of the case.

## 5. Same—Charge of Court Not on Weight of Evidence.

For a charge of court submitting the issuable facts and circumstances of an injury to an employe acting under the orders of his foreman, and involving questions of negligence, held not to be on the weight of evidence, see the opinion.

## 6. Charge of Court—Requested Instructions Properly Refused.

Where the charge of court presents the case fully, and as favorably to the appellant as can be properly asked, it is not reversible error to refuse special charges asked by such party.

## 7. Verdict Not Excessive—Railroad Section Hand.

A verdict for $3,800 is not excessive in favor of the widow and children for the wrongful death of a section hand, thirty-three years old, sound in body and mind, and who had previously made a living for himself and family.

## 8. Railway Company—Injury to Employe—Evidence Admissible.

In an action for the death of a section hand struck by the train of the defendant railway company while endeavoring to remove a pick from the track, it was permissible for another section hand to testify that the foreman told the men they need not watch out for trains, and that he would warn them in time for them to get off the track and remove their tools.

## 9. Same.

So, in such action, it was permissible for witnesses to testify from experience and observation that a person standing on a railroad track cannot tell with accuracy the speed of a train coming towards him on a straight track, although the evidence showed that the deceased was standing a few feet from the track, as he was practically in front of the advancing train.

## 10. Practice—Exclusion of Evidence—Harmless Error.

The error, if any, in refusing to permit a witness to testify because he had been placed under the rule and had remained in court, is harmless, where the bill of exceptions shows that he was called to testify as to contradictory statements made to him before the trial by another witness, and no predicate had been laid for the admission of such testimony.

## 11. Practice—Remarks of Counsel.

Plaintiff's counsel, in his opening remarks in an action for the wrongful death of the husband and father of plaintiffs, said to the jury that it depended on their verdict "whether this widow and orphan children go out of this court room penniless, fatherless, and to the poor-house." This language was excepted to by defendant's counsel and discussed in his argument, and the court charged the jury specially that it was improper, and not to regard it. The amount of the verdict for plaintiffs was small. Held, that such remarks of counsel afforded no ground of reversal.

## 12. Continuance—Discretion of Court.

The refusal of a second application for continuance by defendant, made on the ground of surprise caused by matters alleged in an amended petition filed after defendant's demurrer had been sustained to the original petition, is a matter within the discretion of the trial court.

## 13. Practice—Jury—Selection from Full Panel.

Where a case is duly called for trial, it is not a ground for postponement that twelve out of the twenty-six jurymen composing the full panel for the week are absent from the box, engaged in the trial of another case. Following Railway v. Greenlee, 70 Texas, 559.

APPEAL from Delta. Tried below before Hon. E. W. TERHUNE.

*J. W. Terry* and *Chas. K. Lee,* for appellant.—1. An employe can not

justify doing what is obviously rash, on the ground that he was commanded to do so by his employer; nor can a person justify doing an act that is rash, on the ground that it was to save life or property of another; and one who ventures into a known danger with all the facts before him does so at his own risk, and is not entitled to recover for injuries received while so doing. Railway v. Hester, 11 S. W. Rep., 1041; Cassidy v. Railway, 17 Am. & Eng. R. R. Cas., 520; McDermott v. Railway; 28 Am. & Eng. R. R. Cas., 532; Patterson's Railway Acc. Law, sec. 334; Roul v. Railway, 11 S. E. Rep., 558; Railway v. Jones, 95 U. S., 438.

2. The court erred in submitting to the jury as a matter to be considered by them in justification of Duvall's act in attempting to get the pick, the question of whether he attempted to remove the pick to save human life. Condiff v. Railway, 25 Pac. Rep., 562; Railway v. Gilmore, 62 Texas, 291; Railway v. Kuehn, 70 Texas, 582; Dillingham v. Brown, 17 S. W. Rep., 45.

3. By repeatedly using the terms, "ordinary care and prudence," and "recklessness, rashness, carelessness and contributory negligence," in the same connection, as if synonymous terms, the court clearly indicates that they are synonymous terms, and that to find the plaintiff guilty of contributory negligence the jury must find that he was rash and reckless. Railway v. Jago, 25 S. W. Rep., 713; Baker v. Ashe, 80 Texas, 35; Railway v. Daniels, 1 Texas Civ. App., 695.

4. Where counsel in argument go out of the record and use language calculated to mislead the jury and prejudice the rights of the opposite party, and where the evidence clearly preponderates against the verdict on any issue, or where the verdict, though perhaps not so large that the court will reverse for excessiveness, is still so large as to raise a suspicion of undue influence, the case will be reversed for improper argument. The language used in this case was wholly unwarranted by the record and calculated to lead the jury to act on improper motives and reasons to the prejudice of appellant. The verdict, if it be held that it can find support in the evidence at all, is certainly against the preponderance of the evidence on every issue in the case, and the amount of the jury's finding, if it be held not clearly excessive, is certainly an outside limit. Railway v. Jones, 73 Texas, 235; S. C., 76 Texas, 350; Moss v. Sanger, 75 Texas, 323.

5. The judge of the District Court in civil cases is only entitled to summon talesmen and fill out the regular panel for the week with such talesmen, and to so constitute the jury list, when "the requisite number of regular jurors summoned for the week are not in attendance on court at the time." When the regular jury is in attendance on court, the court has no authority and no right to force parties litigant to choose a jury from talesmen. Rev. Stats., title 57, arts. 3009, 3106; Daniel v. Bridges, 73 Texas, 149.

*Hazlewood & Smith,* for appellees.—1. Where the master orders the

servant into a situation of danger, and he obeys and is thereby injured, the law will not deny him a remedy against the master on the ground of contributory negligence unless the danger was so glaring that no prudent man would have obeyed the order under like circumstances. 2 Thomp. Negligence, 973, 974, 975, 1010; Sherman & Redfield, Law of Negligence (4 ed.), sec. 186; Oil Company v. Farmer, 56 Texas, 301; Railway v. Duffield, 18 Am. & Eng. Ry. Cas., 35; Keegan v. Kavanaugh, 62 Mo., 230; Railway v. Bayfield, 37 Mich., 205; Smith v. Car Works, 12 Am. & Eng. Corp. Cases, 269; Railway v. Watts, 64 Texas, 568; Railway v Callbreath, 66 Texas, 526; Shearman & Redfield on Negligence, sec. 89.

2. A servant who remains at his post of duty in the face of danger and is injured thereby, is not guilty of contributory negligence where such danger results from the negligence of the master, although his only purpose in remaining at his post of duty was to save the property of the master. Kelly v. Railway, 50 Wis., 381; 2 Am. and Eng. R. R. Cas., 65; Knapp v. Railway, 61 Iowa, 91; 18 Am. and Eng. R. R. Cas., 60.

FINLEY, Associate Justice.—This is a suit instituted by the wife and children of Joseph Duvall, deceased, to recover damages on account of the alleged negligent killing of the said Joseph Duvall by the appellant railway company. Their petition charges, in substance, that Joseph Duvall was working as a section hand on defendant's road about 200 feet north of the depot at Pecan Gap, in Delta County, a regular station on defendant's road, at the time he was killed. That he was wholly without experience in railroading, and knew nothing whatever about the movements and operation of railroad trains, having been engaged only five days in the service of the railroad previous to his death. That this fact was well known to the foreman in charge of the section gang with which Duvall was working at the time he was killed. That John Kelley, the foreman, instructed Duvall and the other section men working in the gang, when they first started to work, which was about five days before he was killed, that they, the section men, need not pay any attention to the approach of trains, but to continue at work; that he, Kelley, would keep a look-out and notify them in time to leave the track and remove their tools therefrom in safety. That the train which struck and killed Duvall was a freight going north, and that said train, just before it reached the point where Duvall was working, passed through Pecan Gap, a town of about 600 people, and in passing through the town it crossed two public streets and highways within 600 feet of the point where it struck Duvall. That the track of the defendant, from the point where Duvall was struck to the depot, a distance of 200 feet, is straight, at which last point the track curves round the depot and is straight from that point for more than a mile to the south; and defendant's track is on a heavy descending grade from the south for more than a mile to the point where Duvall was

working at the time he was killed. That the train which struck him was coming down this grade from the south at a high and dangerous rate of speed, to-wit, 35 miles per hour, with no steam escaping, no bells ringing, no whistle sounding or giving any warning whatever of its approach, and that Duvall and the other section men from these facts supposed that the train was going to stop at the station until it had approached within 75 or 100 feet of them.

Appellee further averred that after the foreman saw that the train was not going to stop at the station, and after it had gotten within about 75 feet of Duvall, that he, the foreman, seeing that a large steel or iron pick had been left in the middle of the track by some of the other hands, and in such a position as that it might derail the train or do some serious injury to defendant's property, suddenly and abruptly ordered Duvall to remove the pick from the track. That it was the duty of Duvall to obey the orders of said foreman to remove said pick, and that Duvall, without seeing or appreciating any imminent or immediate danger in the attempt to remove the same, and before he had time for reflection and seeing the dangerous position in which said pick had been left, in obedience to said command by said foreman, attempted to remove said pick from defendant's track, and while in the attempt was struck by the approaching train and killed.

Appellees averred that at the time said command was given by said foreman to said Duvall to remove said pick, on account of Duvall's inexperience, and because he believed said train was going to stop at defendant's station, 200 feet south of him, and on account of the fact that at the time he attempted to remove said pick in obedience to said command, said train was approaching him upon a straight track in such a manner and under such circumstances that he did not know and could not tell anything about the rate of speed at which said train was running, he being at the time he obeyed said command within a few feet of the track.

They further charged that at the time said Kelley commanded said Duvall to remove said pick from defendant's track, that he, Kelley, was standing some twenty feet from defendant's track and was in a position to correctly estimate the speed of said train, and that he was a man of many years' experience in railroading, and knew that Duvall was a man wholly without experience, and from his position at the time he was ordered to remove said pick from the track, he, Duvall, could not see or estimate the danger attending his efforts to remove said pick, and that Kelley was in a position to see, and know the danger to Duvall at the time he commanded him to remove the pick, and that he did know the danger that Duvall would incur in obeying said command.

Defendant answered by general and special exceptions, general denial and special answers, in substance, as follows: 1. The plaintiff was guilty of contributory negligence in that, by his own negligence, want of care and rashness, he contributed to his injuries by going immedi-

at ɛly in front of a train approaching at a rapid and dangerous rate of speed, without occasion therefor and without the direction of any one. 2. That he went in front of the train for the purpose of removing a pick from the track, which pick was negligently left there by Duvall himself, or one of his fellow servants, and its presence there afforded no excuse to him for risking his life to remove the same. 3. That he precipitated himself in front of defendant's train deliberately for the express purpose of recovering damages against the defendant. 4. Setting up some special rules for the guidance of its employes, and alleging that Joseph Duvall's death was the result of his failure to observe such rules.

By supplemental petition plaintiffs, answering to the allegations setting up the rule, set up a promise and undertaking on the part of John Kelley, section foreman, to look out for trains and advise those working under him of their approach. Trial, March 17, 1894, resulted in judgment for plaintiffs for $3,800, from which judgment the railroad company has appealed.

*Opinion.* —The first, second, third, fourth and fifth assignments of error are presented together, and raise the question of the sufficiency of the evidence to sustain the verdict rendered by the jury. Under these assignments the position is assumed, first, that the evidence fails to show that the foreman Kelley was guilty of negligence causing the injury; second, that the evidence shows that Duvall himself was guilty of negligence contributing to produce his injury and death.

The evidence touching the manner in which the death of Duvall was brought about was in some respects conflicting, and in deference to the verdict of the jury settling such conflict in favor of the plaintiffs, we shall accept as true the evidence according with the verdict. The evidence authorizes the following conclusions of fact, which we find to have been established:

1. Duvall died from injuries received by being run over by the engine and cars of the defendant railway, at the time and place alleged in plaintiff's petition.

2. At the time he was killed, he was working as a section hand in the employment of the defendant railway company, under John Kelley, as foreman of the section gang. Kelley had authority to employ and discharge the men composing the section gang, and the men were under his immediate control and direction in the matter of their work. The foreman did no work himself, he only directed, superintended and controlled the work of his men.

3. While the section men were at work upon the railroad track, a train of cars upon the track approached, and the men stepped off the track to get out of the way of the cars. One of the section men, not Joseph Duvall, left his pick with which he had been at work, sticking up in the center of the railroad track, and the foreman commanded Duvall to remove the pick. Duvall attempted to obey the order of his

foreman, but before he could remove the pick the engine struck him, and he received injuries from which he died.

4.  At the time the foreman gave the order to Duvall to remove the pick, the foreman was standing away from the track some twenty or thirty feet, while Duvall was three or four feet from the edge of the track.  The track was straight for some 200 feet in the direction from which the train was coming, and a person standing near the track and practically in front of the engine, as was Duvall, could not judge with any accuracy as to the speed of the train—especially is this true of a person inexperienced in the railroad business.  While one standing off twenty or thirty feet from the track, as was the foreman, can judge with reasonable accuracy of the speed of an approaching train, this is specially true as to persons experienced in such business.  ·

5.  When the foreman gave the order to remove the pick, the engine was some sixty or seventy-five feet away, and moving at a very rapid rate of speed.  The position of the pick upon the track presented the appearance of a dangerous obstacle, and, without time or fair opportunity for reflecting and determining the dangers of the undertaking, Duvall attempted to obey the peremptory command of his foreman to remove such obstruction from the track, but the train was so close and moved so rapidly that he was caught upon the track and killed.

6.  Duvall was inexperienced in railroad operation, had only been at work five days for this company, and had never worked for any other company, while John Kelley, the foreman, was an experienced railroad man.  The foreman had previously instructed him that he need not keep any lookout for the approach of trains, that he, Kelley, would notify him of the approach of trains in time to leave the track and remove all tools in safety.

7.  Duvall knew that the train was approaching when he attempted to remove the pick, but we think it fair to deduce the conclusion from the evidence, that he was not aware of the rapid rate of speed at which the train was running, and believed that he could remove the obstruction before the train reached the point of its location.

8.  The foreman knew, or ought to have known, of the rapid approach of the train and the imminent danger into which he commanded the servant, Duvall, to enter, and was guilty of negligence in so commanding him.

9.  It was the duty of Duvall to obey the orders of his foreman, and his conduct in attempting to remove the pick, under the circumstances, was not negligence on his part contributing to the injury.

The foreman Kelley stood in the relation of master to the deceased; to him the deceased was responsible, and to his orders the deceased owed obedience.

Mr. Thompson, in his admirable work on the Law of Negligence, says, "The duty of the servant being obedience, the law looks with indulgence upon his negligence in placing himself in a situation of danger when the master commands him to do so.  Moreover, the law

remembers that the respective situation of master and servant are un-equal, and excuses the servant in deferring to the superior judgment of the master. If, therefore, the master orders the servant into a situation of danger and he obeys, and is thereby injured, the law will not deny him a remedy against the master on the grounds of contributory negligence, unless the danger was so glaring that no prudent man would have entered into it, even where, like the servant, he was not entirely free to choose. . . . . . The same rule has been applied, and with satisfactory results where the person injured was ordered into service of peculiar danger, such as he did not undertake to perform, by another servant, standing toward him in the relation of superior or vice-principal. If he obeys such an order and is injured, he may recover damages. The law will not declare his act of obedience negligence per se, but will leave it to the jury to say whether he ought to have obeyed or not." Thompson on Neg., 974, 975.

The rule is said to apply with greater force where the servant ordered into a position of danger, is inexperienced in the business.

In Railway Accident Law, it is said, "It is not under all circumstances contributory negligence in a servant to expose himself to a danger which he could avoid; for instance, an engine driver is not bound to desert his post on an engine in order to escape an impending collision; but a servant is contributorily negligent when he exposes himself to a danger which he could avoid without neglecting his duty by the exercise of reasonable care for his own safety. If, however, the danger be not so great, nor so imminent, that a man of ordinary prudence would refuse to encounter it in the performance of duty, the servant who voluntarily incurs that danger is not necessarily contributorily negligent. It may also be said when a servant is injured by reason of his presence in a position of danger, the burden is on him to show that his duty to the railway requires him to place himself in that position." Patterson Ry. Acc. Law, sec. 331, p. 378.

Shearman and Redfield, discussing the liability of the master where the servant is injured by defective machinery after having complained of its condition and received the promise that it should be repaired, at section 186, say: "The true rule in this, as in all other cases, is that, if the master gives the servant to understand that he does not consider the risk one which a prudent person should refuse to undertake, the servant has a right to rely upon the master's judgment, unless his own is so clearly opposed thereto that, in fact, he does not rely upon the master's opinion. So, if the peculiar risk of the act commanded by the master is not obvious, the servant has the right to assume that he is not sent into any unusual peril; and is not bound to investigate into the risk before obeying his orders. A servant is not called upon to set up his own unaided judgment against that of his superiors, and he may rely upon their advice and still more upon their orders, notwithstanding many misgivings of his own. If the master directs the servant to do some act which is dangerous, but which could be made less dan-

gerous by the use of special care on the part of the master, the servant has the right to assume that such special care will be taken, and does not take the greater risk upon himself. If the master calls suddenly upon the servant under such circumstances which give no time for consideration, or if he asks the servant to extricate him from danger, he is bound to indemnify the servant for injuries sustained through obedience to such a call. The servant's dependent and inferior position is to be taken into consideration; and, if the master gives him positive orders to go on with the work, under perilous circumstances, the servant. may recover for an injury thus incurred, if the work was not inevitably or imminently dangerous. This, we are glad to say, is now the settled law in New York, Pennsylvania and other States, as it ought to be everywhere."

In the case of an engineer standing at his post of duty when a collision was imminent, without any express command from the master so to do, and when he could have escaped from the peril, the Supreme Court of Wisconsin refused to pronounce such conduct contributory negligence. On the contrary, the court said: "This evidence presents an example of heroic bravery and fidelity to duty at the post of danger, most praiseworthy and commendable, and an occurrence worthy of lasting regard in the book of heroic deeds." 47 Wis., 637. The same proposition is announced by the Supreme Court of Indiana. Penn. Company v. Roney, 12 Am. and Eng. Railroad Cases, 225. It would indeed sound discordant to the common sense of justice to announce that loyalty and obedience of the servant to the express commands of the master should be regarded as contributory negligence, whenever obedience involved apparent danger to the servant.

Under the circumstances of this case, we think the servant had the right to assume that the master would not unnecessarily precipitate him into peril, and to rely upon the master's superior judgment and opportunity to decide whether he could perform the service without injury to himself. Lorentz v. Robinson, 61 Md., 64; Howard Oil Co. v. Farmer, 56 Texas, 301.

The sixth and seventh assignments raise the proposition that it was error in the charge of the court to submit to the jury the issue as to whether the pick upon the track would have probably wrecked or seriously injured the train, and whether Duvall was moved by a desire to prevent such a result in attempting to remove the pick. It is urged that the evidence showed that the train was not seriously endangered by the pick upon the track, and failed to show that deceased was prompted by a desire to prevent a wreck of the train, and that there was no proper basis in the evidence for the charge. It did not require the positive testimony of witnesses to justify the conclusion of fact, that a large iron pick sticking in the center of the railroad track was a dangerous obstruction; and neither did it require positive evidence as to the motive moving the deceased in his attempt to remove such obstruction. These issues can not be said to have been without evidence.

Aside from this view of the question, the error in the charge, if any, laid unauthorized obstructions in the plaintiff's way of recovery, and was more favorable to appellant than it could properly have expected. It was not essential to the plaintiff's right of recovery that the obstruction really endangered the train, and that the deceased was moved by a desire to prevent the disaster. If an apparently dangerous obstruction was upon the track, and the foreman commanded the deceased to remove it, and he attempted to obey the order and was killed in the effort, if his act was such as would generally have proceeded from an ordinarily prudent man under like conditions, and the foreman was guilty of negligence in giving the order, then the railway company should be held liable in damages for the consequences of the attempt of its servant to obey its express command. If the act of Duvall had been voluntary, and not in obedience to a direct and peremptory command of the master, the restrictions of the charge in question upon the right to recover would appear more reasonable, and in better accord with the principles of justice. It may be seriously questioned whether the master should be heard to assert that the act of the servant, which he expressly commanded him to do, was contributory negligence because it involved apparent danger; or be heard to deny the necessity of immediate performance when the command was peremptory and called for prompt and speedy action by the servant. In this case, however, it is unnecessary for us to determine the law involved in this proposition.

The next four assignments of error, the nineteenth, twentieth, twenty-first and twenty-second, complain of the charge of the court upon several grounds.

The charge of the court in its main features, and so far as necessary to be considered under these assignments, is as follows:

"Second. If the employes of defendant, in the performance of some duty, did that which a man of ordinary care, caution and prudence, under the circumstances, ought not or would not have done, the doing of that act would be negligence upon the part of the defendant; or if an employe of the defendant, in the performance of some duty, omitted or failed to do something which, under the circumstances, a man of ordinary caution, care and prudence ought and would have done, such omission or failure would be negligence upon the part of the defendant.

"Third. Likewise, if Joseph Duvall, at the time of his injury, did something which a man of ordinary care, caution and prudence under the circumstances, ought not or would not have done, he would have been negligent; or if he at that time failed or omitted to do something which, under the circumstances, a man of ordinary care, caution and prudence ought or would have done, he would have been negligent.

"Fourth. It is for the jury to determine under the rules of law herein explained, whether or not a given state of facts would constitute negligence or contributory negligence. But in so far as the rights of plaintiffs are concerned, no facts can be considered on the issue of negligence, charged against defendant other than those alleged in the

petition; and the uncontroverted proof showing that Joseph Duvall saw the train approaching, .it would be immaterial whether the bell was rung or whistle blown or any other warning of the approach of the train given.

"Fifth. . It would have been the duty of Joseph Duvall, as section hand, to obey any reasonable order given him by John Kelley, as section boss, in the performance of a duty in the line of his employment; but if Kelley gave Duvall an order, and if it was apparent to Duvall, or would have been apparent to a man of ordinary prudence, that obedience to such order would probably be attended with personal danger,. then Duvall would not have been required to obey the order, and if he did so, he assumed the risk incident thereto, and the order would be no justification of the act, and he would have been guilty of contributory negligence.

"Sixth.   But if a pick was left on defendant's railway track by someone other than Joseph Duvall, and without fault on his part, and if the character and position of such pick were such that it would,. if not removed, have probably wrecked or otherwise seriously injured the approaching .train, or would have killed or seriously injured persons on board the train, and if John Kelley discovered such danger when it was imminent and directed Joseph Duvall to remove the pick, and if it was apparent to Joseph Duvall that said pick, if not removed, would wreck or otherwise seriously injure the train, or would kill or seriously injure the persons on the train, and if said Duvall discovered such fact when the danger was imminent and could not be averted except by removing the pick, and if it was a part of the duty of Kelley to have such obstructions removed from the track, and if it was a part of the duty of Joseph Duvall to obey orders given him by Kelley to remove such obstructions, and if Kelley ordered Duvall to remove the pick under such circumstances, and Duvall obeyed, and in so doing did not act rashly or recklessly, and if he did act as a person of ordinary care and prudence would have acted under the same circumstances, then Joseph Duvall would not have been guilty of contributory negligence.

"Seventh.   Therefore, if the jury find from the evidence, under the rules of law herein explained, that some one of defendant's employes other than Joseph Duvall, and without fault upon the part of said Duvall, left a pick upon defendant's track between the rails, and if you find that such pick in the condition it was, would appear to the mind of a man of ordinary care and judgment to be an obstruction of such a character as 'would wreck or cause serious injury to the train, or would kill or seriously injure persons on the train, and if you find that it was negligence upon the part of defendant's employes to have so left the pick, and if you. find that the condition of the pick was not discovered by said Kelley or said Duvall until the train was so near that the danger likely to be occasioned by its being left on the track was unusual, sudden and imminent, and could not be averted save by removing the pick, and if you find it was the duty of said Kelley to.

have the pick removed from the track before the train reached it, and that it was the duty of Joseph Duvall to obey any order relative to such removal made by Kelley; and if you further find that it appeared to Joseph Duvall that said pick, if not removed, would have wrecked or otherwise seriously injured the train, or would have killed or seriously injured the persons on said train, and that said Duvall went onto the track to remove said pick in obedience to such order, and that he thought such action was necessary to prevent injury to the train or persons on the train, and if you find that in going on the track Joseph Duvall was acting as a man of ordinary care and prudence would have acted under the same circumstances, and was not guilty of recklessness, carelessness or contributory negligence; and if you further find that said Duvall was struck by the train while attempting to remove the pick and killed, and that the proximate cause of such injury was negligence upon the part of the defendant's employes, and that such negligence consists of the matters alleged in plaintiff's petition, then you should find for plaintiffs.

"Eighth. If the jury do not find from the evidence that the condition in which the pick was left on the track was such as to make it reasonably appear to a man of ordinary care, caution and prudence that serious injury would be done to the train or persons on it unless it was removed; or if the proof does not show that Joseph Duvall went on the track to remove the pick in order to prevent what he thought would be injury to the train or the persons aboard the train; or if the proof does not show that John Kelley ordered Joseph Duvall to remove the pick; or if the jury do not find that a man of ordinary care, caution and prudence would have acted as Joseph Duvall acted under the same circumstances as surrounded Duvall; or if the jury find that the proximate cause of Joseph Duvall's injury was his own negligence or carelessness, or if the jury find that Kelley did order Duvall to remove the pick, and further find that it was apparent to Duvall that to obey such command was attendant with open and obvious danger to himself, such as would likely cause serious injury to him or his death, to such an extent as to make it an act of recklessness or want of ordinary care for him to remove the pick; or if the jury find that at the time Joseph Duvall undertook to remove the pick it was plainly apparent to him that to undertake to do so would imperil his life or seriously injure his person, and that a man of ordinary care, caution and prudence would not have made the attempt under the circumstances, then and in either event you should find for the defendant."

The first of these objections to the charge is, that the court used the terms rash, reckless and contributory negligence in such a way as to convey the impression that in legal significance they are synonymous. We have quoted the charge at length in order that its meaning may be fairly determined. It correctly defines the meaning of the term negligence, as applied to the servant and the master generally, and clearly tells the jury that if Joseph Duvall was guilty of negligence which

proximately contributed to the injury, the defendant is not liable. In the latter part of the sixth paragraph of the charge this language is used—"and if Kelley ordered Duvall to remove the pick under such circumstances and Duvall obeyed, and in so doing did not act rashly or recklessly, and if he did act as a person of ordinary care and prudence would have acted under the same circumstances, then Joseph Duvall would not have been guilty of contributory negligence." The jury were plainly told that the test to be applied to the act of Duvall, in determining the question of contributory negligence, was, would an ordinarily prudent man have acted as he did under like circumstances? This is the test which the law applies, and we see no reason why the jury should have been confused or misled by the charge, in the particular here complained of.

The second objection is, that the sixth and seventh paragraphs of the charge are upon the weight of the evidence, because they submit to the jury whether it was the duty of Kelley to have the pick removed from the track, and whether it was the duty of Duvall to remove the pick, if ordered to do so by Kelley, there being no evidence upon such issues. This objection is wholly without merit.

The third objection is directed at the sixth paragraph of the charge, and complains that the court submitted to the jury the issue, whether it was an act of negligence on the part of the defendant and its employes to have left the pick on the track. The sixth paragraph of the charge submits no such issue to the jury. The seventh paragraph of the charge does incidentally bring that question before the jury. It is not alleged as negligence by the plaintiffs and made a ground of recovery; it was not made an issue by the evidence, and the court does not submit it as authorizing a recovery in his charge. The charge in this very paragraph limits the jury to the negligence alleged in the petition, and in other portions of the charge some of the alleged acts of negligence are withdrawn. Under these circumstances we can not conceive how the jury could have been misled to appellant's injury.

The fourth objection is, that the sixth paragraph of the charge is upon the weight of the evidence. The objection is not well founded.

The twenty-third assignment relates to the refusal of the court to give special charges asked. The charge of the court presented the case fully, and as favorably to appellant as it could properly ask, and the special charges were correctly refused.

It is also insisted that the recovery in this case was not justified, for the reason that the evidence did not show that the deceased had contributed anything to his wife and children. The evidence was amply sufficient to justify the verdict. The deceased was a young man about thirty-three years old, sound in body and mind, and had previously made a living for himself and family. The verdict is not at all excessive.

It is assigned as error that the court permitted a witness, one of the section gang, to testify that the foreman told the men they need

not watch out for trains, that he would warn them in time for them to get off and remove the tools. This evidence was pertinent, as it tended to show the reliance which the section men were expected to place in their foreman as governing their movements in relation to approaching trains.

On the trial the defendant placed an attorney, J. J. Young, upon the stand as a witness. On objection made by plaintiff's attorney, that the rule had been invoked in the case and the witnesses placed under the rule, and Mr. Young had remained in the court house and heard all the testimony, the court declined to allow the witness to testify. The bill of exceptions recites that he would have testified to statements made to him prior to the trial by one of plaintiff's witnesses, Frank Wise, contradictory to his testimony in the case upon a material point. The bill also recites that no predicate had been laid for the introduction of this testimony. In view of this recital, it is clear that the testimony desired to be affirmed was not admissible, and no wrong has been done appellant. The evidence being inadmissible upon this ground, it is unnecessary to consider whether the reason assigned by the court for refusing to permit the witness to testify is tenable.

The following assignment of error directed at the introduction of evidence is presented: "The court erred in permitting the following interrogatory to be propounded to the witnesses E. J. Gee and H. C. Thompson—'If you have said that you can tell something of the speed of a train by observing it, then state whether or not a person standing upon a railroad track can tell with any accuracy the speed of a train coming toward him on a straight track. Do you answer this as a matter of opinion or from actual experience and observation?' and the answer of E. J. Gee as follows: 'A person standing upon a railroad track can not tell with any accuracy the speed of a train coming toward him on a straight track. I answer this as a matter known to me from actual experience and observation.' And the answer of H. C. Thompson, as follows: 'A person standing on a straight track (railroad track) can not tell the speed of a train coming toward him. I answer this from actual experience and observation'—to be read to the jury over objections of defendant that the interrogatory asked for the opinion of said witnesses upon a hypothetical case, which is not the case made by the evidence or any of the evidence offered by plaintiffs, and that the answers are, for that reason, irrelevant and immaterial in this case, in this: that they ask whether or not a person standing upon a railroad track could tell with any accuracy the speed of a train coming toward him, when it is not shown in this case that the deceased was standing on a railroad track, but that he was standing at the side of the track."

The evidence was admissible. The evidence showed that Duvall was standing just sufficiently off the track to be out of the way of the cars, and was practically in front of the train when he was commanded to remove the pick.

The action of the court in overruling appellant's application for con-

tinuance is assigned as error. It was the second application, and the continuance was sought on the ground of surprise at matters alleged in an amended pleading filed by the plaintiffs after demurrers had been sustained to the original petition. We do not think the court abused its discretion in overruling the application.

In his opening argument the attorney for the plaintiffs said to the jury: "It depends upon your verdict, gentlemen of the jury, whether this widow and orphan children go out of this court room penniless, fatherless and to the poor-house." The appellant's counsel excepted to this language, and discussed it in his argument. The court instructed the jury specially that it was improper, and not to regard it. The amount of the verdict in this case is small, and while the language was improper, we do not think, under the circumstances, that it had any effect upon the verdict of the jury, and therefore should not be treated as material error.

The last assignment presented is as follows: "The court erred as shown by the first part of defendant's bill of exceptions No. 12, as follows: 'That on the trial of this cause, after both sides had been required to announce, there were only fourteen jurors in the box, the remainder of the panel for the week (twelve men) being out considering of their verdict in another case, and did not report until five hours after the action complained of in this bill took place. Defendant's counsel demanded that they have the entire regular panel of twenty-six men in the jury box before making challenges, and objected to proceeding without said twelve men being in the jury box, which demand and objection were overruled, and the defendant excepted.'"

In this action there was no error. Railway v. Greenlee, 70 Texas, 559. We find no reversible error in the proceedings of the court below, and the judgment is affirmed.

*Affirmed.*

Delivered January 25, 1896.

Writ of error refused.