## HARRY G. SKINNER *vs.* JAMES H. McLAUGHLIN.

*Negligence—Sufficiency of Evidence—Inexperienced Workman Directed to Assist in Launching a Boat.*

Plaintiff was employed as a general laborer at defendant's shipyard, but on the day the injury was caused for which this action was brought defendant directed him to assist in launching a scow. The deck of the scow was encumbered with lumber and while plaintiff was engaged with other men in paying out a rope which regulated the movement his foot was caught in a kink or coil and his leg was crushed against a post around which the rope was passed. There was evidence that the place in which plaintiff was directed to work was dangerous because there was not sufficient room for handling the rope, and also that the work itself was such as to be dangerous to a person unacquainted with it. No warning of the danger was given to plaintiff and he had not previously assisted in launching boats. *Held*, that the evidence justified the submission to the jury of the question whether the defendant was not negligent in failing to provide a safe place for plaintiff's work, or in not giving him warning of the danger involved in the work ordered to be done.

Appeal from the Superior Court of Baltimore City, (DOBLER, J.), where there was a judgment in favor of plaintiff for $1,000.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*Wm. S. Bryan, Jr.,* and *George Weems Williams,* for the appellant.

It must be perceived that the expert evidence for the plain-

tiff was of a very inconclusive character.    The witnesses derive their opinions about the launching of scows from their experience in launching vessels and steamers.

When the plaintiff applied for employment as a laborer at the shipyard, in the view of the law he not only assumed all the risks ordinarily incident to that service, but he also represented that he had the capacity to understand the nature and character of the service and the requisite ability to perform it. *Bailey on Master and Servant*, sec. 2718; 14 *Am. & Eng. Ency. Law*, (1st ed.) 906; 3 *Elliott on Railroads*, sec. 1285; *Bailey on Personal Injuries*, secs. 693, 2865; *Ariack* v. *Woollen Co.*, 151 Mass. 156; *Walsh* v. *R. Co.*, 27 Minn. 367; *State* v. *Malster*, 57 Md. 306.

The method of snubbing in launching scows was approved by the experience of twenty-six years (that was the time Skinner had been in the business); and no accident had ever occurred before the present one.    Skinner is an experienced and intelligent shipbuilder and so is McKoster; they both think that the method was safe and judicious.

The "experts," who had never seen this method used, preferred some other plan.    A citation from 1 *Bailey on Master and Servant*, sec. 222, is quite apposite here : "A manufacturer may choose the kind of machinery he desires to use, be it old or new, and may control his business in his own way, provided he does no unlawful act.    If the machinery is sound, well made and kept in repair, he will not be liable for an accident occurring to an employee, when the only ground alleged is that there is a better and safer kind used for the same purpose."    See also *Wonder's case*, 32 Md. 411; *The Maharajah*, 40 Fed. Rep. 784; *R. Co.* v. *Myers*, 63 Fed. Rep. 798; *Danocott* v. *C. & O. R. Co.*, 83 Va. 294; *Burke* v. *Wetherbee*, 98 N. Y. 592; *Wood* v. *Heighes*, 83 Md. 257.

Something may be said about the pile of planks on board the scow.    The plaintiff knew they were there ; he helped to put them there himself.    If he had the competency for his duties, which he virtually asserted that he had when he sought employment, he knew whether it was dangerous or

not. And he contracted to encounter the hazard, if there was any. When ordered to assist in snubbing the scow he made no objection. Whatever risk there was, as already stated, was obvious to any one of ordinary intelligence and competency. As said by the Court in *Yates* v. *McCullough Iron Co.,* 69 Md. 380 : "Legal language has no meaning unless knowledge such as the undisputed facts of this case  *  *  * show the plaintiff had, amounts to a voluntary encountering of the risk. In such cases the law imputes and presumes knowledge of the risk or danger and will not allow the injured workman to aver or prove that he had no actual knowledge thereof." See also *Stricker's case,* 51 Md. 68; *Michael* v. *Stanley,* 75 Md. 464, 475, 476; *Williams* v. *Churchhill,* 137 Mass. 243. The plaintiff must take ordinary care to learn the dangers likely to beset him. *Eckard* v. *Lazaretto Co.,* 90 Md. 189; *Wood* v. *Heighes,* 83 Md. 269. There was no evidence that the plaintiff was injured through any fault of the defendant ; there was no evidence to show any failure of duty on his part.

*Julian S. Jones* and *C. Dodd McFarland* (with whom was *Peter J. Campbell* on the brief), for the appellee.

1. The appellant owed a duty to the appellee to provide a reasonably safe place for him to perform the work for which he was employed. *Norman* v. *Wabash R. Co.,* 22 U. S. App. 505, 507; *Gowen* v. *Bush,* 40 U. S. App. 349, 357; *B. & O. Railroad* v. *Baugh,* 149 U. S. 368, 386; *Am. Tobacco Co.* v. *Strickling,* 88 Md. 500; *Eckhardt* v. *Lazaretto Co.,* 90 Md. 188.

2. The place assigned to the appellee between the Sampson post and the lumber pile was a dangerous place, and the handling of the snubbing rope in that place was a dangerous work, the dangers of which were unknown to the appellee and to all other persons except those experienced in the handling of snubbing ropes, when paid out rapidly and by a great force, and it was the duty of the appellant which he owed to the appellee before ordering him to assist in handling the snubbing rope in that place to have warned him of the hidden dangers.

3. (*a*) The appellee had no knowledge of the launching of boats or of the management of snubbing lines when used upon a boat for the purpose of stopping or snubbing her while being launched, and did not see the hidden and latent dangers incident to the work of handling and holding the snubbing line in the place he was ordered to go by the appellant, on the deck of that scow, and neither the appellant nor any one else warned the appellee of the hidden and latent dangers incident to the work he was ordered to perform. *Union Pacific Rwy. Co.* v. *Jarvi*, 10 U. S. App. 439; *Pikesville, etc., R. Co.* v. *Russell*, 88 Md. 572.

(*b*) Neither the appellee nor any one else inexperienced in the launching of boats and in the handling of snubbing lines could have known or could have seen the dangers of the work which was assigned to the appellee.

(*c*) That the work which the appellee was ordered to do was dangerous to an inexperienced man is clearly shown by understanding the circumstances surrounding it as well as from the testimony of the expert witnesses ; that the appellee was ordered to a place of unusual and imminent peril to an ignorant and inexperienced man is clearly illustrated by the sudden manner of the terrible accident which came upon him.

(*d*) The appellee, while at the ship yard of the appellant, had no opportunity to acquaint himself with the work of launching of boats and the handling of snubbing lines.

(*e*) The appellant knew, or by the exercise of ordinary care should have known of the secret and hidden danger incident to the handling and holding of that snubbing line on the deck of that scow.

(*f*) The appellant knew, or by the exercise of ordinary care should have known of the inexperience and ignorance of the appellee concerning the work of handling and holding the snubbing line for the purpose of stopping or snubbing a boat while being launched, and the inexperience of the appellee concerning the operation of launching boats of any kind.

*Exceptions to the rule that a servant assumes the risks of his employment.* *Lorentz et al.* v. *Robinson*, 61 Md. 70; *Wood* v.

*Heighes,* 83 Md. 257; *American Tobacco Co.* v. *Strickling,* 88 Md. 505–506; *Pikesville, etc., R. Co.* v. *Russell,* 88 Md. 563; *Levy.* v. *Clark,* 90 Md. 146; *Eckhardt* v. *Lazaretto Cv.,* 90 Md. 188; *Pullman's Palace Car Co.* v. *Harkins,* 17 U. S. App. 22; *Rummel* v. *Dillworth,* 131 Pa. 509; *Brennan* v. *Gordon,* 118 N. Y. 489; *Union Pacific Railway Co.* v. *Jarvi,* 10 U. S. App. 439; *Bohn Mnnufacturing Co.* v. *Erickson,* 12 U. S. App. 260.

4. Probative force of the expert testimony submitted. *Baltimore Elevator Company* v. *Neal,* 65 Md. 451; *Leslie* v. *Granite Railroad Company,* 172 Mass. 468; *Obrien* v. *Look,* 171 Mass. 36; *Lang* v. *Terry,* 163 Mass. 138; *Oties* v. *Cowles Electric Smelting and Aluminum Co.,* 7 N. Y. S. 251; *Scandell* v. *Columbia Const. Co.,* 64 N. Y. S. 232; *Nutzman* v. *Germania Life Insurance Co.,* 78 Minn. 504; *Transportation Line* v. *Hope.* 95 U. S. 297; *Taylor* v. *Munroe,* 43 Conn. 36; *Wood* v. *Heighes,* 83 Md. 259.

5. Negligence of co-employee not involved in this case. *Lorentz et al.* v. *Robinson,* 61 Md. 70; *Bailey's Personal Injuries Relating to Master and Servant,* secs. 984, 985; *Jones* v. *Florence Mining Co.,* 66 Wis. 271; *G. S. & S. F. Ry. Co.* v. *Kizziah,* 86 Tex. 81.

BOYD, J., delivered the opinion of the Court.

The appellee sued the appellant for injuries sustained by the former while assisting in launching a scow in the shipyard of the latter.   Although the record shows that a great many exceptions were noted during the progress of the trial, the action of the Court in rejecting the 17th and 18th prayers offered by the defendant is all that we are asked to review. They are as follows : Seventeenth. "The testimony failing to show that the plaintiff was injured through any fault of the defendant, the verdict under the pleadings must be for the defendant."   Eighteenth.   "The defendant prays the Court to instruct the jury that under the pleadings in this case there is no legally sufficient evidence to show any failure of duty on the part of the defendant and therefore the verdict must be for the defendant."

The appellee was employed by the appellant in the latter part of November, 1896, and received the injury complained of on the 21st of January, 1897. He testified that he was employed as a laborer and did such work as he was told to do. Although the appellant said he had no recollection of it, the evidence on the part of the appellee was to the effect that the appellant himself directed the appellee to assist in launching this scow, if John Revel, another employee, did not come back in time and as he did not come the appellee obeyed the order given him by the appellant. The method adopted in launching the scow is described with great detail in the record and briefs, and a model used at the trial was before us. The scow was eighty feet long, twenty-eight feet wide and eight feet deep. It was decked over, excepting the space for the deck-house near the lower end. When ready for launching it was supported by columns of blocks of wood so arranged as to make the scow incline towards the water's edge, and under it were stationary skids which also inclined in the same direction. Sliding skids were placed on the stationary ways, all of which were greased, so that when the weight of the scow came on them it would easily move into the water. For the purpose of "snubbing" or stopping the scow after it slid in the water, one end of a rope, which was something less than two inches in diameter, was fastened to a beam at the water's edge, near the lower end of the middle of the scow, and the rope was carried under the bottom of the scow, over the upper end and the rest of it was coiled on the deck. There were three "Sampson posts," one on each side and one in the centre of the deck, a few feet from the upper end of the scow. Four men were placed upon the deck to handle and hold the snubbing line, and thereby stop the scow when far enough out in the water. The blocks and other supports were removed so as to lower the scow to the skids, and when it slid off the ways a turn of the rope was put around the centre Sampson post so as to enable the men to snub or stop the scow as it went out into the water.

On the deck was a steam winch, five or six pieces of large

timbers, one hundred and sixty planks, one inch thick, one foot wide and sixteen feet long, and some other articles. The plaintiff's testimony was to the effect that the planks were piled up about twelve or fifteen feet in the rear of the centre Sampson post. The four men were in line along the rope—plaintiff being the second one from the post, Mr. Wheltle, the foreman around the yard, being next to it. When the supports were removed the scow slid down on the skids, rapidly according to the plaintiff's witnesses, Wheltle wrapped one turn of the rope around the Sampson post and about that time there was a jerk or jar which caused the plaintiff to lose his footing and in some way the rope caught his foot and his leg was crushed against the Sampson post by the weight and speed of the scow pulling on the rope. He was taken to a hospital and after being there for some days it was found necessary to amputate his leg.

The testimony on the part of the appellee, which we must in passing on these prayers accept as true, was that the appellant personally ordered him to assist the other men and it is not denied that he was on the scow a few minutes before it was launched. He was near when the accident happened, although he had gone off the scow. Several witnesses testified that he called out to the men not to let it run into a boat which was in the dock. The theory of the appellee is that the place where he was called upon to do this work was not reasonably safe, that the appellant knew that fact but he (the appellee) was not aware of the danger which was not apparent to an inexperienced person. In *American Tobacco Company* v. *Strickling*, 88 Md. 504, we quoted from the case of *B. & O. R. R. Co.* v. *Baugh*, 149 U. S. 368, where it is said: "A master employing a servant impliedly engages with him that the place in which he is to work, and the tools or machinery with which he is to work, or by which he is to be surrounded, shall be reasonably safe. It is the master who is to provide the place, and the tools and machinery, and when he employs one to enter into his service he impliedly says to him that there is no other danger in the place, the tools and machinery,

than such as is obvious and necessary." Of course if the danger be such that the servant by the use of such care as can be reasonably expected of one occupying a position or undertaking the work he does can know it, and he voluntarily undertakes the work, he has no right to complain of an injury resulting therefrom, and in accepting the employment he assumes such risks as are usually incident to the service. There are but few occupations requiring manual labor that are not more or less dangerous, and there are many risks that the servant is subjected to from the negligence of his fellow servants for which he has no remedy against the master, if he is thereby injured. But as was said in *Lorentz* v. *Robinson*, 61 Md. 70, " If injury results to the servant from the direct act or negligence of the master, as where he is personally super-intending the work and giving orders, he is answerable for the damages to the same extent as if the relation of master and servant did not exist. This doctrine is illustrated by cases where the master, without warning him of the danger, orders his servant into a situation which the master knows, and the servant does not know, to be dangerous, and the latter obeys and is thereby injured ;" or as stated in *Wood* v. *Heighes*, 83 Md. 268, "the master cannot negligently expose the servant to such extraordinary perils in the course of the employment that the servant from the want of knowledge, skill or physical ability, cannot by ordinary care and prudence, under all the circumstances of the case, guard himself against them."

This case was very fully argued and perhaps the authorities cited by counsel deserve more extended notice than we will give them in this opinion, but there have been so many cases in this State involving the liability of masters to servants that it seems useless to us to quote further from them or to enter into a prolonged discussion of the subject. The general principles applicable to them are well settled and it is only when the facts of a particular case distinguish it from the usual ones that any difficulty arises, and then it is usually determined by such facts. In this case the Court below granted ten prayers offered by the defendant and many of the propositions now

contended for by the appellant were embodied in them.   There
was unquestionably some evidence before the jury that the
place in which the appellee was directed to work was danger-
ous by reason of the fact that there was not sufficient room
for the handling of the rope, and also that there was great
danger of the rope injuring any one not acquainted with the
use of it when occupying such a position.   As the scow slid
into the water the rope had to be taken in so rapidly that it
could not be regularly coiled.   One witness said it "would
coil, kink, go in every way, fling fashion and liable to catch
any obstruction that is in its way, no matter how small or
large."   When the scow started the men on the deck had to
haul in about eighty feet of this heavy rope, which ran under
the scow, and just as the rear end of the boat reached the
water the rope was wrapped around the Sampson post once
and the men were expected to hold on to it, paying it out as
gradually as the speed of the scow and their strength would
permit, after it passed the beam to which the rope was attached.
According to the appellee's testimony, it went so rapidly that
it jerked the rope that had been piled up behind the men,
forming "kinks" in it, one of which caught the appellee's foot
which was in some way raised off the floor of the deck, and
he was dragged in that kink to the Sampson post.   Several
witnesses said that such an accident was liable to occur to a
person unacquainted with the movements of a rope, under
such conditions, and if the testimony offered by the plaintiff
is to be accepted, as it must be, there can be no doubt that it
was dangerous to require four men to thus attempt to handle
the rope in the space between the lumber pile and the Samp-
son post.   Nor can there be any doubt that there was evidence
to the effect that the plaintiff did not know the danger.   His
own testimony was that he had had no experience in launch-
ing boats, and that of other witnesses was that one who was
not acquainted with the peculiar movements of a rope in thus
launching a boat would not know the danger attending it un-
less warned.   It is true that this is contradicted by testimony
offered by the defendant, but that was for the jury and not

the Court to pass on. The plaintiff had never, before this accident, been engaged in this character of work. The appellant had no reason to assume that he was acquainted with the danger, as the work he had been doing prior to that time, in the employ of the appellant, was of an entirely different character. If it be conceded that under the appellee's employment, as a laborer, he could properly be called upon to aid in launching a boat, still, if during all the time he had been employed there he was engaged in other work, and had no opportunity to become acquainted with this sort, and especially if it was dangerous to handle the rope by reason of the small space left between the lumber pile and Sampson post, or on account of the proximity of other boats in the dock, as testified to by some witnesses, but such danger was not apparent to an inexperienced person, the appellant owed a duty to the appellee to warn him when he directed him to take part in work that was thus dangerous. He had had a large experience in the building and launching of boats. He was present and saw, or could have seen, the precise conditions under which the men must do the work, and when he directed one, who was a mere laborer and without experience in this character of work, to help others, but gave him no warning of the dangers, or any instructions as to how he might protect himself from them, it cannot be said as a matter of law that he was not at fault or that he had not failed in any duty he owed the plaintiff. In what we have said we of course assume that there were the hidden dangers spoken of by the plaintiff's witnesses, that the plaintiff was not aware of them and could not have been by the exercise of reasonable care and that the defendant was—concerning all of which there was sufficient evidence to go to the jury. It may be difficult to reconcile the verdict of the jury with the instructions that were given by the Court and the testimony that appears in the record, but that is not for us to pass on, and being of opinion that the Court below was right in declining to grant these prayers the judgment will be affirmed.

*Judgment affirmed, appellant to pay the costs.*

(Decided January 17th, 1902.)