THE STATE v. SEATON, *Appellant.*

DIVISION TWO.

1. Practice: BILL OF EXCEPTIONS. A bill of exceptions must be filed by the clerk within the time granted by the court, and, where it is not filed until the day after the expiration of such time, it will be disregarded on appeal.

2. ———— : ————. Where there is no bill of exceptions and no error appearing in the record proper, the judgment will be affirmed on appeal.

*Appeal from Lawrence Circuit Court.*—HON. JOSEPH CRAVENS, Judge.

AFFIRMED.

THE defendant, Charles Seaton, was jointly indicted with his brother, Grant Seaton, in the circuit court of Jasper county, at its September term, 1889, for murder in the first degree, for the killing of one Lewis Channell in said county on the fifth day of June, 1889, by shooting him in the head with a pistol. He and his codefendant, Grant Seaton, were duly arraigned on said indictment, and for plea thereto said they were not guilty in manner and form as charged in the indictment. Thereafter, at their request, a severance was granted in said cause, and the prosecuting attorney elected to try the cause of State *v.* Charles Seaton first. On the application of said defendant, Charles Seaton, a

continuance was granted him until the March term, 1890, and at said March term, on his application for a change of venue, on the ground that the minds of the inhabitants of Jasper county were so prejudiced against him that he could not have a fair trial, a change of venue was granted to Lawrence county.

At the August term, 1890, of the circuit court of Lawrence county, said cause being tried, defendant was found guilty of murder in the first degree, as charged in the indictment, and sentenced to be hanged. His motion for a new trial, and in arrest, being overruled, he appealed from the judgment and sentence of said court to this court. And on the fifteenth day of September, 1890, the day on which the judgment was rendered, and the appeal granted this defendant, leave was given him to file a bill of exceptions within ninety days from said date; and thereafter, on the fifteenth day of December, 1890, he filed what purports to be the bill of exceptions in this cause.

If this bill is to be considered as a part of the record, the testimony shows that Lewis Channell and William Eddy were employed by Jackson Simpson in running an engine near the town of Joplin, Jasper county, Missouri; that William Eddy ran it from twelve o'clock at night until twelve o'clock in the day-time; and Lewis Channell, the deceased, from twelve o'clock in the daytime until twelve o'clock at night. On the fifth of June, 1889, at about half past twelve o'clock in the daytime, Lewis Channell came on duty in attending to the engine and to relieve William Eddy. At the time he had on a ladies' gold watch, a small watch which he had been carrying for about three weeks before. He was seen on duty there in the engine room' at about nine o'clock that night, and at that time had the watch with him. He carried the watch in his watch-pocket, and had it fastened with a string which he had tied to his suspenders. On the night of June 5, 1889, at twelve o'clock, William Eddy went to the engine

room to go on duty and relieve Lewis Channell; when he got there he found him dead in the engine room; there was a bullet in his head; the bullet had entered the back part of his neck a little below his hair and passed through his brain, coming out at the right temple. Part of deceased's brain was carried out by the bullet. The doctors who examined him testified that the shot would produce death instantly. The watch deceased had on the night he was killed had been taken from his person; the strings and cords by which the same were fastened having been cut in two.

Prior to the killing of deceased, the defendant and the family, of which defendant was a member, had been living in Joplin, Jasper county, Missouri; but, on the day of the killing, and for a few days previous, the family, together with defendant, had been making preparations to move to Barry county; and on the day of the killing had everything in readiness to leave the next morning.

Westley Reed, who helped to take the Seatons to Barry county, and who remained at their house the night before they started, testified that he did not see the defendant there that night, nor the next morning when he got up. Grant and Wash. Seaton, brothers of defendant, had gone to bed with him in the same room about nine o'clock that night; the next morning when he woke up Grant Seaton was standing by the bed, but he saw nothing of Wash. Seaton. The next time he saw defendant was out on the road four or five miles from town; he and his brother, Frank, were driving a cow and a calf; and that the defendant did not start with the other members of the family to Barry county, but left much earlier that morning, without taking time to get his breakfast; that they were about three days on the road going to their destination in Barry county. A week or two after they were there defendant was showing to a young boy, named Falkiner, a gold watch, which the boy Falkiner described as being very much

like the one which had been seen in the possession of deceased just before he was killed.

Shortly after this the sheriff of Jasper county went to Barry county, and meeting defendant on the road arrested him. He asked him what he had, and he said he did not have anything but twenty cents. The sheriff, Miller, told him that he did not want his money, and then commenced searching him and found a ladies' gold watch in his pocket, and asked him where he got the watch, and he said that he had been playing marbles with a boy in Joplin just before he left there, and had won it of off him ; he did not give the boy's name ; he said he lived in Joplin. At the time he was arrested, and when the sheriff found the watch, he turned very pale and was very much excited. The sheriff took the defendant back to Jasper county, and committed him to jail in said county on the charge of having murdered the deceased. Shortly after being confined in said jail the defendant confessed to one H. C. Dale, that he had shot and killed deceased ; he said that they had at one time had a difficulty but that they had gotten over that, and at the time of the killing he had nothing against deceased, but killed him for the watch.

The watch which was found by Sheriff Miller on the person of defendant was produced and identified in court, and being shown Mrs. Sarah Channell, the wife of the deceased, she testified that it was her watch, and that the deceased had been carrying it for a short time previous to his death, and had it on his person on the day of the killing.. Defendant's father, mother and brothers testified that the defendant was at the house asleep on the night of the killing, and did not leave until the next morning about daybreak, when he started with the cow and calf to Barry county. In this they were contradicted by Westley Reed, and also by George Mulkey, who testified in rebuttal on the part of the state, that he saw the defendant about three o'clock on the morning of the killing of deceased at the white

lead works, which are situated in the northwest of Joplin, and are a little over a mile from East Joplin, and about a mile from where deceased was killed.

Before admitting the testimony in regard to the confession made by defendant, the court heard a great deal of testimony on the question as to whether there had been any inducements held out to defendant to make such confession, and as to whether it was made under the influence of hope or fear. The defendant and his two brothers, who were confined in the jail at the same time, testified that it was represented to defendant that it would be much better for him to make a confession; that he was under age and they could not hang him or send him to the penitentiary; all that they could do was to send him to the reform school, and that there was danger of himself and his brothers being mobbed if he did not make a statement. This testimony was contradicted by witnesses called on the part of the state, who testified that no promises or threats were made, and that the confession was made voluntarily by the defendant.

The instructions which the court gave in said cause are as follows: "The court instructs you that it is your duty to consider and weigh the evidence in this case, in accordance with the law as contained in these instructions, and return into court your verdict in this case, from a consideration alone of the evidence produced before you in this case, and the facts and circumstances as shown by the evidence.

"You are the sole judges of the weight of the evidence and the credibility of the witnesses. You may believe or disbelieve the whole or any part of the testimony of any witness, accordingly as from the evidence in the case, and the facts and circumstances as shown by the evidence, you may believe such testimony to be true or false.

"If from the evidence in the case, or facts or circumstances shown by the evidence, you believe any

The State v. Seaton.

witness has wilfully sworn falsely to any material fact in the case, you will be warranted in disregarding the whole or any part of the testimony of such witness. In determining the degree of credit to be given to the testimony of any witness, you may consider, along with the other evidence, the character, conduct and manner while on the witness stand of such witness, his or her relation to the case or to the parties, and interest in the result of the trial, his or her relation to or feelings toward the defendant or the deceased, the probability or improbability of his or her statements, his or her connection with or any part in the difficulty, as well as all the facts and circumstances given in evidence.

"The defendant is presumed innocent until proven guilty by the evidence in the case, and it devolves on the state to prove him guilty beyond a reasonable doubt. Unless from the evidence you believe the defendant guilty beyond a reasonable doubt, you must acquit him, and return a verdict of not guilty ; but, to authorize an acquittal on that ground alone, such doubt must be a substantial doubt arising from the evidence in the case, and not a mere possibility of the innocence of the defendant.

"If you believe from the evidence that the defendant, Charles Seaton, at the county of Jasper, in the state of Missouri, in the month of June, 1889, wilfully, deliberately, premeditatedly and with malice aforethought, killed Lewis Channell by shooting him with a loaded revolver or other loaded firearm, on the neck or head, you should find said defendant guilty of murder in the first degree, and simply so state in your verdict. In that case the law fixes the punishment, and with that the jury has nothing to do ; but, on the other hand, unless from the evidence you believe the defendant guilty as aforesaid, you should by your verdict find him not guilty.

"The word 'wilfully,' as used in the foregoing instruction, means intentionally, not accidentally.

In the absence of qualifying facts or circumstances, the law presumes that a person intends the ordinary and probable result of his acts.

"If you believe from the evidence that the defendant, with a loaded revolver or other firearm, shot Lewis Channell in a vital part and killed him, you will find the defendant intended to kill him, unless the facts and circumstances given in evidence show the contrary.

"The word 'deliberately' means done in a cool state of the blood, from a formed design and fixed purpose, and not in what the law calls a 'heat of passion;' and by 'heat of passion' is not meant passion or anger which comes from an old grudge or no immediate cause of provocation, but it means passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of deceased at the time; and 'deliberately' does not mean brooded over or reflected upon for a week, a day or an hour; and no specific time need be shown for such deliberation; a moment will do as well as an hour.

"There is no evidence in this case to show that defendant acted under the influence of such violent passion aroused by any cause or provocation.

"Premeditatedly means thought of beforehand, for any length of time, however short.

"Malice in law, and as used in the foregoing instructions, does not mean mere spite, ill-will or dislike, as it is ordinarily understood, but in law it signifies a condition of mind showing a heart void of social duty, and fatally bent on mischief, or that condition of mind which prompts one person to take the life of another without just cause or provocation; and 'malice aforethought' means with malice thought of beforehand, or malice and premeditation.

"The court instructs the jury that he who wilfully—that is, intentionally—uses upon another at some vital part a deadly weapon, such as a loaded gun or firearm, must, in the absence of qualifying facts, be

presumed to know that the effect is likely to be death,
and, knowing this, must be presumed to intend the death
which is the probable and ordinary consequence of such
an act; and, if such deadly weapon is used without just
cause or provocation, he must be presumed to do it
wickedly or from a bad heart. If, therefore, you
believe from the evidence that the defendant, Charles
Seaton, took the life of Lewis Channell, by shooting
him in a vital part with a loaded revolver or other fire-
arm, with the manifest design to use such weapon upon
him, and with sufficient time to deliberate and fully
form the conscious purpose to kill, and without suffi-
cient reason or cause or extenuation, then such killing
is murder in the first degree, and while it devolves on
the state to prove the wilfulness, deliberation, premed-
itation and malice aforethought, as set forth in the
other instructions, all of which are necessary to consti-
tute murder in the first degree, yet these need not be
proved by direct evidence, but may be deduced from all
the facts and circumstances attending the killing; and,
if you can satisfactorily and reasonably infer their
existence from all the evidence, you will be warranted
in finding the defendant, Charles Seaton, guilty of mur-
der in the first degree.

"The court instructs the jury that evidence is either
direct or circumstantial. Direct evidence is where a
witness testifies of his own knowledge of the main fact
or facts to be proven. Circumstantial evidence is proof
of certain facts and circumstances, from which may be
inferred other connected facts which usually and rea-
sonably follow according to the common experience of
mankind; and it is your duty to consider circumstantial
evidence, and, if from the facts and circumstances proved
in evidence, you believe the defendant, Charles Seaton,
guilty, then it is your duty to give circumstantial evi-
dence the same force and effect as direct evidence, and
convict the defendant. But where, as in this case, it is
sought to convict upon circumstantial evidence, the

facts and circumstances proved, when taken together, should all point to the defendant, Charles Seaton, as guilty, and must be so conclusive that the death or killing of Lewis Channell cannot be accounted for on other reasonable ground or hypothesis, than that of the guilt of defendant, Charles Seaton. And such facts and circumstances should not only be consistent with his guilt, but should be inconsistent with his innocence. It is not enough that the probabilities of defendant's guilt are greater than the probabilities of his innocence.

"If you believe that the deceased, Lewis Channell, was killed, and from the evidence believe the defendant, Charles Seaton, made any statements after the killing in reference thereto, then you should consider all that he said together; and while the defendant is entitled to what he said for himself, if true, the state is entitled to anything he said against himself in any conversation proved by the state. What he said against himself the law presumes to be true, because against himself; what, however, defendant said for himself or in his own favor, you are not bound to believe, because said in a conversation proved by the state; but you may believe or disbelieve it, according as it was shown to be true or false by the evidence in the case.

"The defendant is a competent witness in his own behalf, but the fact that the defendant is the accused person on trial, testifying in his own behalf, may be considered by you in determining the degree of credit to be given by you to the testimony of said witness.

"The jury are instructed that in determining whether or not the defendant made the statement to the witness Dale, in the Carthage jail or in his presence, you may take into consideration all the facts and circumstances detailed in evidence in relation to the killing, including the position of the body when found, the location of the wound on the body, and all the other facts and circumstances in evidence tending to corroborate or contradict such statement, together with the

witness' means of seeing and hearing said statement at the time.

"The jury are instructed that it devolves on the state in this case to prove the defendant guilty of the crime of murder in the first degree, not only by the greater weight of evidence, but by evidence so clear, conclusive and convincing as to satisfy you beyond a reasonable. doubt that the defendant alone is guilty, and unless you so believe from the evidence beyond a reasonable doubt, you should acquit the defendant.

"Although the jury may believe from the evidence that on the night of the fifth day of June, 1889, Lewis Channell was robbed and killed, nevertheless, if you further find from the evidence the defendant, Charles Seaton, was at the time of such killing not at the place of the killing, but elsewhere, then you must find the defendant not guilty.

"The jury are instructed that in this case the defendant stands charged with the crime of murder in the first degree, and under the evidence you must either find the defendant guilty of murder in the first degree or acquit him."

*T. B. Haughawout* and *McPherson & Bro.* for appellant.

*John W. Wood*, Attorney General, for the State.

The bill of exceptions was not filed in time. And, though we have considered other questions raised during the progress of the trial, yet there is really nothing before this court for consideration, but the record proper. On pages 23 to 26 of the transcript, it is shown that on the fifteenth day of September, 1890, leave was granted defendant to file a bill of exceptions within ninety days from that date; and, on page 27 of the transcript, it is shown that the bill of exceptions was not filed until the fifteenth day of December, 1890,

which would make ninety-one days from the time that leave was granted to file a bill of exceptions in vacation. *State v. Hill*, 98 Mo. 571; *Fulkerson v. Houts*, 55 Mo. 300 ; *Clark v. Bullock*, 65 Mo. 535.

GANTT, P. J.—The defendant was indicted by the grand jury of Jasper county, at the September term, 1889, for murder in the first degree. He was granted a continuance to the March term, 1890. At that term he applied for a change of venue, and this was granted and the cause removed to Lawrence county. At the August term, 1890, the cause was tried, and defendant was convicted of murder in the first degree.

In due time he filed his motions for new trial and in arrest, which being overruled, he was sentenced to be hung on the thirty-first day of October, 1890. He was sentenced on the fifteenth day of September, 1890, and on that day the court gave him leave to file his bill of exceptions "*within ninety days from that date.*"

On the eleventh of December, 1890, a bill was presented to Judge JOSEPH CRAVENS who tried the cause, and he signed it ; but it was not filed with the clerk of the Lawrence circuit court until the fifteenth day of December, 1890; in other words, it was filed on the ninety-first day after the leave was given.

We are met at once with the objection by the attorney general, that nothing in this so-called bill of exceptions can be considered by us on this appeal ; that it is no part of the record. The gravity of the case has caused us to consider this objection with great care, but we have concluded that we have no more power to interpolate into a record extraneous matter, filed one day too late, than we would have, to consider a bill filed one year out of time. The common law requires a record of all proceedings to be made in term time in the present tense, and, when the term closed, the record was closed.

A practice has prevailed for many years permitting bills of exceptions to be filed in vacation within the

time specified by an order of record. And it has been uniformly held not only that the bill must be signed by the judge but be *filed* by the clerk. A record of a court imports absolute verity. To do so, the record ought to be without suspicion. It ought, at least, be found in the keeping of its lawful custodian. On the fourteenth day of December, 1890, when the ninety days had expired, this bill of exceptions was not on file in the clerk's office of Lawrence county. When that day closed, the record in this case was closed. No possible blame or reflection can attach to any officer of the court. The judge signed it on the eleventh of December, and no reason appears why it was not deposited with the clerk in time.

The defendant has been granted every consideration both by the circuit court and this court. He was assigned counsel to defend him. When the verdict was against him the court ordered the court stenographer to furnish him a copy of the evidence at the cost of the state. This court permitted him to prosecute his appeal as a poor person without payment of docket fee or other costs.

We have examined the record proper and find no error in it. We have no right to consider any of the exceptions that are not properly in the record, and it is accordingly our duty to affirm the judgment of the circuit court, and it is so adjudged. All concur.