(Decided January 6th, 1897.)

---

## ANDREW J. PALMER ET AL. *vs.* ROBERT H. HUGHES ET AL.

*Attachment on Original Process—Right of Trustee in Insolvency to Intervene—Appeal—Exceptions—Evidence Contained in Certificate of Judge—Time of Signing Certificate—Fraud—Assignment for Benefit of Creditors.*

When an attachment has been issued against a party who is subsequently adjudged an insolvent, his trustee in insolvency has a right to intervene in the attachment suit and move to quash the same.

When testimony is taken before the Court upon a motion to quash an attachment, the best method of bringing the evidence before the Court of Appeals is by a bill of exceptions, but a certificate of the trial Judge will be considered.

But, when upon such motion, the evidence is contained in a certficate of the trial Judge which was not signed until after the lapse of the term of Court, and after the attachment was quashed, and when there is no consent of the parties or order of Court extending the time for filing the certificate, and nothing to show that the appellants were not responsible for the delay, the Court of Appeals will not consider the evidence contained in such certificate, but will be confined to the depositions taken before the examiner and made a part of the record.

An attachment on original process for fraud was issued upon an allegation that the defendant had assigned or disposed of his property with intent to defraud his creditors, and that he fraudulently con-

tracted the debt for which the attachment was issued. *Held*, upon the facts, that these allegations were not sustained by the evidence, and that the attachment was properly quashed.

Defendant in an attachment on original process for fraud, had made an assignment for the benefit of creditors on June 28th, which was placed on record the same day, but no bond was filed by the trustees, a bond being requisite in order to vest title in them, and on July 11th the attachment was issued. Meanwhile, defendant had carried on negotiations for a composition with his creditors. *Held*, that the failure of the trustees to file a bond was not evidence that the defendant had assigned his property with intent to defraud his creditors, or that he was about to do so.

Appeal from an order of the Circuit Court for Howard County (JONES, J.), quashing an attachment on original process.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, ROBERTS and BOYD, JJ.

*G. W. S. Musgrave* and *M. Sonnehill*, for the appellants.

The plaintiffs in these attachment cases excepted to the hearing of the motions to quash because their debtor had been adjudicated an insolvent and the matter should have been relegated to the Insolvent Court, but the Court overruled their exceptions. By their attachments, the plaintiffs had secured an inchoate lien against the property of the subsequently adjudicated insolvent. Whatever liens existed have been enforced in the Insolvent Court alone. *Buschman* v. *Hanna*, 72 Md. 4; *Cross* v. *Hecker*, 75 Md. 574 and 576; *Riley* v. *First Nat. Bank*, 81 Md. 17 and 24; *Willison* v. *First Nat. Bank*, 80 Md. 196.

The deed of trust was executed by Hughes for the purpose of hindering, delaying and defrauding his creditors. The trustees, who were also the attorneys for the grantor, recorded the deed, appraised the stock, represented themselves as trustees to the creditors, used the deed to force the creditors to accept whatever they chose to pay them in compromise of their debts, and then contend that they never filed bond as trustees as required by law, because they

wanted to effect a settlement. If ever a deed was used for the purpose of enforcing creditors to accept a compromise, the deed referred to in this case was so used. A conveyance, apparently fair and valid on its face, if used for the purpose of forcing creditors to accept a compromise, is as much within the condemnation of the Statute of Elizabeth as if the fraud had been written on its face. *Collier v. Hanna & Smith,* 71 Md. 260.

It is not necessary, in order to bring the assignment within the Statute of Elizabeth, that there should be an actual intent to perpetrate a fraud, if the necessary effect of the instrument be to hinder, delay and defraud creditors. The legal presumption is that it is made for that purpose. *Schuman v. Peddicord,* 50 Md. 560. Where any transaction produces the effect which the Statute of Elizabeth declares fraudulent as to creditors, the Court pronounces such act fraudulent. *Note to Swan v. Dent,* 2 Md. Ch. 111. The grantor, if, by executing and having recorded this deed, interposed an obstacle between his property and the lawful process of his creditors, and used the same to dictate a settlement to his creditors, as is clearly shown in this case, the operation of the same brings the statute into strict application. The assignor remained in possession of his personal property after the assignment. Such a retention of possession is in itself a badge of fraud, and where the debtor is left in possession it is imperative for the party supporting the validity of the transaction to prove the assignment was executed in good faith and without any intent to defraud. *Bump on Fraudulent Conveyances,* 4th ed. sec. 357 ; *Price v. Pitzer,* 44 Md. 529.

Possession of personal property must accompany and follow a deed of assignment by a debtor, and unless the possession by the assignor is explained, it will render the assignment void against creditors. *Burrill on Assignments,* sec. 250. The law will not permit a debtor in failing circumstances to sell his land and absolutely convey it and yet secretly reserve unto himself a right of possession for a

limited time.  *Lukins* v.  *Aird*, 6 Wall. 79.   In this case, not only does the assignor remain in possession of the personal property after executing the deed of trust, but he remains in possession as  the owner, exercising  all the rights of ownership, disposing of the same to suit his convenience, and  retains  the proceeds of the sales for his personal uses. If a bold scheme of this character  is not in  palpable and unquestionable violation of the provisions of the Statute of Elizabeth, it is difficult to find a case that would be.   If, in this case, the grantor had provided in the  deed  for  retention  of the  possession of the  property,  the  deed  would have  been fraudulent and void on its face ; but  here, without so doing,  he retains  possession  and  exercises  acts of ownership, and converts  the  proceeds of the  property to his  own use, therefore the  fraud  is  of  greater  magnitude than  a  mere  provision  for control and  possession embodied in  a  deed would have  been.   As to  the lien of the attachments levied after the assignment by reason of the trustees failing  to  give  the  required  bond,  there  is  no  possible question.   *White* v. *Pittsburg Nat. Bank*, 80 Md. 1.

*John E. Dempster* and *Edward T. Jones*, for the appellees.

This  appeal  should  be  dismissed because  the  exceptions were not  signed  during  the  term.   By Code, Public Local Laws, Article 14, section 36—" Howard County "— it is provided :   There shall be  two  terms  of the  Circuit Court for  Howard  County,  held at  Ellicott  City, in said county, on the third  Monday in March and the first Monday in September, in each year.   Consequently, the order appealed from having been passed by the Circuit Court on. July 13th, 1896, and the exceptions not having been signed until October 2nd, 1896, after a  new term  had  begun, the appeal  should  be  dismissed.   *Wheeler* v. *Briscoe*, 44 Md. 308 ; *Soper et al.* v. *Jones*, 56 Md. 503 ; *Hooker et al.* v. *Sawyer*, 56 Md. 468 ; *Mayor & C. C. of Westminster* v. *Shipley*, 68 Md. 610.

Appellants entirely fail to produce any proof of fraud on which to base their attachment. The testimony of Jacob Spear, a creditor of Hughes, shows that after the latter's assignment, Hughes still expressed himself as of the opinion that he could pay dollar for dollar, and had only assigned because outstanding book accounts could not be turned into ready cash to meet claims of some of the creditors who were pushing him, and that he had therefore turned the entire stock over to his creditors. Mr. Spear also testified that it was he, one of the creditors, who suggested to Hughes a meeting of the creditors and the compromise in order that the business might be continued, and further, that his offer to Mr. Palmer, the largest creditor, to indorse Hughes' note for sixty per cent., was done without the knowledge of either Hughes or his trustees. Henry Schnepfe, another witness, and one of the largest creditors, wanted Hughes to continue the business, knew he would pay if allowed to continue, as he believed him (Hughes) thoroughly honest. The testimony of Mr. Louis T. Clark is to the effect that when he advised Hughes not to assign but to take the benefit of the insolvent law, for the reason that he would, by assigning, remain liable for what his property would not pay, Hughes declined to act on this advice because he said he believed his property would pay all he owed, and therefore preferred to assign. It is further shown by the testimony of Mr. Fisher, the credit man of Seliger & Newman, and the author of the attachments sued out by them, that he himself acted as Hughes' adviser, and that the agreement drawn for the creditor's settlement was in his (Fisher's) own handwriting. The allegations that Hughes concealed or disposed of any of his property or effects, etc., or fraudulently contracted any of the obligations in question, totally fail of substantiation by any facts testified to by appellants' own witnesses ; and to negative these allegations and to show *bona fides* and absence of fraud, there is the uncontradicted testimony of Messrs. Clarke, Spear, Schnepfe, and even of Mr.

Fisher, who admits his offices and advice in arranging a proposed settlement.

BOYD, J., delivered the opinion of the Court.

An attachment on original process for fraud was issued by the appellants against Robert H. Hughes on the 11th day of July, 1895. On the 28th day of June, of that year, Hughes had made a deed of trust for the benefit of his creditors to John E. Dempster and Louis T. Clark, but they did not file a bond, as required by the statute, to vest the title in them. The sheriff seized the stock of goods, wares and merchandise of the defendant, who was a merchant, and also laid the attachment in the hands of Messrs. Dempster & Clark. The defendant made a motion to quash the attachment and subsequently what is called in the record a supplemental motion to quash the attachment was filed by John E. Dempster, permanent trustee of the estate of Robert H. Hughes, insolvent. The principal reasons assigned in the motions and urged before us were, first, that Hughes did not assign, dispose of or conceal his property, and was not about to do so, with intent to defraud his creditors ; second, that he did not fraudulently contract the debt or incur the obligation for which said attachment was issued— those being the grounds relied on for issuing the attachment.

The first question to be considered is whether the Court below should have permitted the insolvent trustee to intervene in the attachment case and make a motion to quash. It is contended by the appellants that the Court as a common law Court no longer had jurisdiction because Hughes had been declared insolvent. But the cases relied on do not sustain that contention. There are a number of decisions of this Court to the effect that the assets of an insolvent must be distributed under the authority and direction of the insolvent Court, where the rights of lien creditors as well as others will be protected, but that does not preclude the trustee from appearing in an attachment case to have it determined whether the attachment was properly

issued. Sometimes the validity of a lien is necessarily involved in the proceeding instituted for the purpose of having the party adjudicated an insolvent and it may often happen that there is no defence to the attachment which has been issued prior to the insolvent proceedings, but when the trustee has reason to believe that the attachment ought not to have been issued, or is fatally defective, it is not only his right but would ordinarily be his duty to appear in the attachment case and seek to have it disposed of. The case of *Collier and Shea* v. *Hanna et al.*, 71 Md. 253, expressly recognized that right, and the case of *Buschman* v. *Hanna*, 72 Md. 1, one of the cases cited by the appellants, refers to the fact that the trustee had intervened in the case in 71st Md. and made motions to quash the attachment. It does not intimate any doubt about the propriety of that proceeding, but as the motions to quash were overruled this Court determined that the creditors could not proceed further against the property of the insolvent under the attachment, but their liens were not impaired and could be asserted in the insolvent Court.

Before determining whether the attachment was properly quashed, it will be necessary to dispose of a preliminary question which affects some of the evidence in the record. Upon application of the permanent trustee the hearing of the motion to quash was set for June 27, 1896, with leave to either side to take testimony before one of the standing examiners of the Court. Some testimony was taken before one of them, but the evidence was not completed by June 27th, and the Court, " in view of the incomplete state of the testimony, then ordered that the motion to quash be set for hearing on July 7, 1896, with leave to produce witnesses for oral examination in Court." On the last-mentioned day the case was taken up upon the written evidence already taken and the oral examination of certain witnesses which were produced before the Court. The testimony taken orally is not brought before us by a bill of exceptions, but by a certificate of the Judge " that upon the foregoing evi-

dence the Court sustained the motion to quash said attachment." When extrinsic evidence is introduced at the hearing of a motion to quash or to set aside process, and an appeal is taken to this Court, the facts must of course be presented in some properly authenticated form so that we may know what proof was submitted to the Court below. The best and most reliable method of thus presenting the evidence offered orally is by a bill of exceptions, and if that practice be always pursued it will oftentimes avoid technical difficulties which may stand in the way of the Appellate Court considering the evidence. It was held in *Dumay* v. *Sanchez et al.,* 71 Md. 508, which was a motion to quash an attachment, that the facts in evidence below may be presented to this Court by a bill of exceptions, by an agreed statement of facts, or by depositions taken under authority of the Court properly authenticated and filed in the cause. In *Coulburn* v. *Fleming,* 78 Md. 210, where there was a motion to strike out a judgment, there was a statement of evidence which, by a written agreement filed in the case, counsel admitted was given at the hearing of the motion and the agreement was approved by the Court as correct. The certificate of the Judge in this case cannot, strictly speaking, be said to be a bill of exceptions, but it was intended as a substitute for one. Although we do not think this the best way to bring before us the testimony taken orally before the Court below, we would not, in a motion of this kind, refuse to consider the facts contained in the certificate merely because they were presented in that way and not by a bill of exceptions, but there is a serious difficulty in the way. The certificate was not signed by the Judge until the 2nd day of October, 1896, which was nearly two months after the attachment was quashed and several weeks after the adjournment of the term at which the order appealed from was passed. It has been held in a number cases that a bill of exceptions cannot be signed after the adjournment of the term, except by consent, unless the Court has passed an order *during the term* extending the time

beyond the term.  *Wheeler* v. *Briscoe,* 44 Md. 308 ; *Hooker et al.* v. *Sawyer,* 56 Md. 468 ; *Soper et al.* v. *Jones,* 56 Md. 503 ; *Thomas* v. *Ford,* 63 Md. 346 ; *Mayor, etc.,* v. *Shipley,* 68 Md. 610.

It was said in 68 Md. 610, *supra,* " It is of great importance that the rule upon this subject be definite and fixed and that it be applied with strictness ; for if it be relaxed it will inevitably beget contentions that will likely involve counsel, and sometimes the Court, in conflicts of recollection, as to the circumstances of the delay, as well as to the facts proper to be incorporated in the exception."   If this be so in reference to formal bills of exception, it is certainly of equal importance in certificates of the character before us.   Upon what principle should the Court refuse to receive a bill of exceptions because signed after the adjournment of the term, without the consent of the parties or previous order of the · Court, and yet accept a certificate which is intended to take the place of the bill of exceptions and which, in a motion of this character, has the same object, namely, to present the facts that were before the lower Court?   We can see no valid reason why such a distinction should be made, but on the contrary can well understand how it might result in evading the useful and important rule above referred to.   For if having a certificate of the Judge instead of a bill of exceptions will entitle the appellant to file it after the adjournment of Court, that practice would often be resorted to.   In this case the consent of the parties is not only wanting, but there is a protest in the record against signing a bill of exceptions because the term had adjourned—the counsel doubtless supposing that the evidence would be presented in that form and not by certificate.   There was no order of the Court passed extending the time and nothing to show that the appellants were not responsible for the delay.   We cannot, therefore, consider the evidence contained in this certificate, but in our examination of the facts will be confined to the depositions taken before the examiner, which were filed in the case and are a part of the record.

There is then very little evidence before us and what there is does not sustain the charges of fraud upon which the attachment is based. It is true that the deed of trust was made on the 28th day of June, 1895, was placed on record the same day and the trustees named in the deed had not given a bond up to the time the attachment was issued, July 11, 1895. But under the statute, as construed in several cases by this Court, the title did not vest in the trustees until the bond was given and therefore the filing of the deed of trust could not of itself in any way interfere with the creditors of Hughes proceeding against him or his property. If his intention was to assign, dispose of or conceal his property with intent to defraud his creditors, the execution of the deed and placing it on record would have a tendency to put his creditors on inquiry, and to cause them to watch him more carefully than they would otherwise have done. If his object in making the deed of trust was to force a settlement by his creditors at less than he owed, that could have been better accomplished if the trustees had first given bond. There is evidence to the effect that efforts were being made to settle with the creditors, and as late as July 11, 1895, the day the attachment was issued, negotiations were still going on with these appellants. There were two meetings of the creditors held and quite a number of them had signed an agreement to accept twenty-five per centum of the amount due them. Amongst that number were two of the largest creditors. On July 8, 1895, Mr. Fisher, the bookkeeper of Messrs. Seliger & Newman, who also issued an attachment on July 11th, wrote to Mr. Hughes a letter in which he said, " I drew up a compromise paper for you and you might have use for it; see if it is what you want. I was at the meeting last week and tried to do all I could for you and at the next meeting I will help you out if I get a chance." That " compromise paper," as he called it, was enclosed with his letter and provided for paying thirty-three per centum to the creditors of Hughes, but does not seem to have been signed by any of

them.   Hughes admits he stated about the time he made the deed of trust that his estate would pay dollar for dollar, but he says the effort to compromise was made at the instance of his attorneys and of his creditors.   If in point of fact those named as trustees found upon examination of Hughes'-affairs that it would be to the interest of all parties, especially the creditors, there could be no objection to an effort to settle with them.   It oftentimes happens that it would be greatly to the advantage of the creditors if the debtor would call them together and give them a true statement of his financial condition, subjecting himself to an examination by them.   Estates of insolvents are not infrequently sacrificed by forced sales and expenses incident to the sales.   It would have been impossible for Hughes to have defrauded his creditors by the execution of this deed of trust without the active aid of the trustees.   Without more evidence to justify such a conclusion than we have before us we cannot assume that the gentlemen named as trustees, who are members of the bar, would lend themselves to the perpetration of such a deliberate fraud on the creditors of Hughes, merely because they were his attorneys. The evidence fails to establish that the defendant had assigned, disposed of or concealed his property with intent to defraud his creditors, or that he was about to do so and the attachment cannot be sustained on that ground.

Nor is there sufficient evidence to sustain it on the other allegation—that he had fraudulently contracted the debt. There is no evidence of that reflecting on this case.   The only evidence before us that could apply to either of the three cases that were heard together was that of Mr. Fisher with reference to the debt due Messrs. Seliger & Newman. Mr. Fisher testified that Hughes said when he bought the last bill that he " was perfectly solvent and could pay three for one for every dollar he owed," and that he " could raise the money to pay all his indebtedness in ten minutes." Hughes flatly denies that, and as the controversy is really between the trustee in insolvency, representing all the cred-

itors, and those who are seeking to have priorities through their attachments, Hughes' testimony is entitled to more weight than if it was a question simply between him and others, and is in law entitled to as much weight as that of Mr. Fisher who was in the employ of one of the attaching creditors, and who was at the time the debt was contracted the " credit man " of Messrs. Seliger & Newman. It seems remarkable that Mr. Fisher should have believed, as he says he did, the statement of Hughes that he " could raise the money to pay all his indebtedness in ten minutes," and that he relied on that statement, especially as he says in another place that Hughes told him " he had a good deal of money due him and that some of it was hard to collect." He might have known that a man who could raise sufficient money in ten minutes to pay all his indebtedness would not be likely to buy goods on sixty days' time, the credit given in this case. A country merchant who could thus promptly pay his indebtedness would certainly be an exception to the general rule. Then again, Fisher testified that he believed until the second creditors' meeting that Hughes was solvent. Yet before that he wrote the letter above quoted and enclosed the compromise paper for settlement with his creditors on the basis of thirty-three per centum. The goods sued for by Seliger & Newman were purchased on March 14th and April 16th, several months before the deed of trust was made, and there is no evidence that Hughes was not solvent at that time, or at least that he did not really believe he was. So if Mr. Fisher's recollection of what Hughes said is correct, there is not sufficient evidence to show that Hughes fraudulently contracted the debt of Seliger & Newman or either of the other attaching creditors.

It is unnecessary to prolong this opinion by discussing the technical questions raised about the affidavits and vouchers, as the order of the Court must be affirmed for the reasons we have given.

*Order affirmed with costs to the appellees.*

(Decided January 6th, 1897).