(Decided December 20th, 1898.)

---

## THE AMERICAN TOBACCO COMPANY *vs.* JESSIE MAY STRICKLING BY NEXT FRIEND.

*Negligence—Liability of Master for Dangerous Machinery on Premises—Smooth Vertical Shaft Unprotected— Warning of Danger—Computation of Time—Time of Signing Bills of Exception.*

Plaintiff, an inexperienced young girl, was employed to sweep the floor of a room in a factory where there was a smooth, vertical shaft passing through the floor and revolving rapidly. The shaft was unguarded in any way, and plaintiff's dress being caught by it, she was severely injured. The evidence established that there is danger in such a shaft to persons approaching near, but no notice of such hidden danger had been given to plaintiff. *Held,* that the employer is liable in damages for negligence in leaving the shaft unguarded, when no warning of danger had been given to the plaintiff, since he knew or ought to have known of the existence of the danger.

When a statute provides that an act shall be done within a certain number of days exceeding seven, the general rule is that Sundays must be included in the computation of the time.

Local Code, Art. 4, sec. 170, provides that, unless the time be
extended, bills of exception must be signed within thirty
days after the rendition of the verdict. *Held,* that Sundays
must be included within the computation of this time.

Appeal from the Court of Common Pleas of Baltimore
City (HARLAN, C. J.). At the trial the plaintiff offered
the following prayers:

*Plaintiff's 1st Prayer.*—That it was the duty of the
defendant to exercise ordinary care to provide a reason-
ably safe place in which the female plaintiff might per-
form the service which she was employed to perform
for said defendant.—(*Granted.*)

*Plaintiff's 2d Prayer.*—If the jury find under all the
circumstances testified to in the case, that the defendant
in requiring the female plaintiff, under her employment
as testified to in this case, to sweep the floor of the room
in which was located the shaft in question, and while the
same was in motion and unboxed, exposed the said
plaintiff to a probable danger or risk which she had no
reason to believe or know from the nature of her em-
ployment she would have to encounter; and further find
that such danger or risk arose from causes hidden or
secret, or such as would reasonably escape her obser-
vation, the defendant was bound to notify the said plain-
tiff of such danger or risk, if the defendant knew, or
by the exercise of ordinary care ought to have known,
of such probable risk or danger.—(*Granted as modified.*)

*Plaintiff's 3d Prayer.*—If the jury find from the evi-
dence that the female plaintiff was, in the month of May,
in the year 1897, employed by the defendant to sweep
the floors and stairways of its tobacco factory, and that
she was when so employed a girl of seventeen years of
age and ignorant of and inexperienced in the operation
of all kinds of machinery, including shafting used in
factories for the transmission of power, and so con-
tinued up to and including the day on which the acci-
dent occurred, if they so find; and that in one of the
rooms in which said plaintiff, under her said employ-
ment, was required to sweep, there was constructed a

vertical iron shaft extending from the floor to near the ceiling of said room of about three inches in diameter and revolving at the rate of about 160 to 170 revolutions a minute, and that said shaft was for its whole length exposed, unguarded and uncased, if they so find; and further find that a shaft when so constructed and in motion was dangerous when in a room where female employees, clad in apparel usually worn by females, were liable or required to come in close proximity or contact with it, and that the defendant knew, or might have known by the exercise of ordinary care, of such danger as probable, if they so find; and that such danger was not obvious and apparent to a person ignorant of and inexperienced in the operation of such shafts, if they so find; and that said plaintiff was not warned and did not know and could not under all the circumstances of the case know by the exercise of ordinary care of such danger, if they so find; and if the jury find that the defendant, in constructing and putting in motion said shaft in said room as above described, when said plaintiff was sweeping the floor of said room, was guilty of a want of ordinary care, under all the circumstances in the case; then if the jury further find that in May, 1897, the said plaintiff, in the course of her employment, while sweeping the said room in which was constructed said shaft, and while using due and ordinary care in said sweeping, was caught by her clothing in said shaft and injured, and that said injury was not caused by the negligence of said plaintiff, then the plaintiff is entitled to recover in this action.—(*Granted as modified.*)

The jury rendered a verdict for the plaintiff for $6,000.

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, ROBERTS, BOYD and PEARCE, JJ.

*William L. Marbury* (with whom was *Carroll T. Bond* on the brief), for the appellant.

*Thomas G. Hayes* and *James A. Fechtig, Jr.* (with whom was *Daniel B. Chambers* on the brief), for the appellee.

Boyd, J., delivered the opinion of the Court.

The appellee, Jessie May Strickling, was employed by the American Tobacco Company, the appellant, in one of its factories in Baltimore, and whilst engaged in her regular work was seriously injured by reason, as she claims, of the negligence of the company. When she first went into the company's employ in January, 1897, she worked on a sieve—putting tobacco in a sieve—but her employment was subsequently changed to sweeping the floors of the factory, and she was so engaged in May, 1897, when she was injured. Amongst other places she was required to sweep was a room in which there was a smooth, revolving, vertical shaft, which ran from the floor to the ceiling, and which was in an aisle or passage-way between the wall and a stationary machine—being about twenty-six inches from the former and sixteen inches from the latter. The shaft is three inches in diameter and at the time of the accident it made about one hundred and seventy revolutions a minute. It was the duty of the plaintiff to sweep around this shaft as well as other places where the dust collected on the floor, and in doing so on the morning of the accident her apron was caught in some way and drawn around the shaft. She was whirled around and violently striking such objects as were in her way, probably the wall and machinery, had her clothing torn from her and received injuries which confined her in a hospital for nine weeks. The shaft was not boxed or otherwise protected, and it is not pretended that the plaintiff, who was seventeen years of age and altogether inexperienced in the use of machinery, was ever warned as to any danger from it. She sued the company and recovered a judgment for six thousand dollars, and a motion for a new trial having been overruled an appeal was taken to this Court. A motion to dismiss the appeal has been made on the ground that the bill of exceptions was not signed within the time allowed by the statute. That motion must prevail for the reasons hereinafter given, but as the case was fully argued and we understood counsel to say that a case was pending in which the

father of the plaintiff was suing the defendant for loss of services of his daughter as the result of this accident, we will first pass upon the merits of the case.

Cases between master and servant have been so numerous in this State, as well as elsewhere, that it is generally difficult to discuss one of that class without simply repeating what has been already said and announced as the law applicable to them.    The precise question whether a master can be held liable for leaving unprotected and unguarded a smooth shaft in a place where one inexperienced in machinery and shafting will be called in the line of her duty, without warning to her, has not been before this Court, but the principles applicable to it have been frequently stated.    We are not called upon to discuss some of the questions that frequently arise in cases of this character as it is not pretended there was any contributory negligence on the part of the plaintiff, nor can it be said that the danger was so obvious or apparent to her as in anywise to interfere with her right of recovery.    On the contrary, the evidence not only shows that she was inexperienced and knew of no danger lurking in that rapidly revolving shaft, but the appellant bases its defence mainly on the fact that its agents did not and could not by the use of reasonable care have known that there was any danger in leaving the shaft unprotected.

In referring to the law of the case, we may very properly begin with the proposition stated in the plaintiff's first prayer, that it was the duty of the defendant to exercise ordinary care to provide a reasonably safe place in which the plaintiff might perform the services which she was employed to perform for the defendant. In the case of *B. & O. R. R. Co.* v. *Baugh*, 149 U. S. 368, the Supreme Court of the United States thus announced that principle: " A master employing a servant impliedly engages with him that the place in which he is to work and the tools or machinery with which he is to work, or by which he is to be surrounded, shall be reasonably safe.    It is the master who is to provide the place and the tools and machinery, and when he em-

ploys one to enter into his service he impliedly says to him that there is no other danger in the place, the tools and the machinery, than such as is obvious and necessary." It is true, however, and the Court below so instructed the jury, that the law does not require persons owning and operating factories containing machinery to guard against every accident that may possibly happen to their employees, but only against such as in the ordinary experience of persons using machinery are known to be likely to occur. The plaintiff's third prayer is the one that is most objected to. It submitted to the finding of the jury the employment and inexperience of the plaintiff, the location and construction of the shaft, whether it was dangerous to female employees required to come in close proximity to it, whether the defendant knew or might have known by the exercise of ordinary care of such danger as probable, whether such danger was obvious and apparent to a person ignorant of and inexperienced in the operation of such shafts, whether the plaintiff was warned of its danger and whether the defendant was guilty of the want of ordinary care in constructing and putting the shaft in motion when the plaintiff was sweeping the room, as well as the question of care on the part of the plaintiff.

It is contended by the appellant that there was nothing which required the defendant to anticipate an accident of this sort as likely to occur from a failure to guard this piece of smooth shaft, and that the defendant neither knew nor could have known by the exercise of ordinary care of the hidden danger to the plaintiff or others. But the record we think fully justified the Court in submitting those questions to the jury. A number of expert witnesses testified, and those on the part of the plaintiff not only said there was danger from leaving a shaft of this kind unprotected, but they gave instances of accidents from coming in contact with shafting which had happened in their own experience or observation. G. B. Ahler, who had been a machinist for over twenty years, said a person approaching shafting like this, especially a girl or a woman, is liable to be caught and be

wound up by it, and that he always instructed owners of buildings where he erected machinery to box up the shafting. James O. Towson, who had been a machinist since 1875, said: " I consider a vertical shaft to be dangerous if it is not enclosed; and it has always been my custom, when it has been found absolutely necessary to place a vertical shaft, to advise the additional expense of enclosing it." Charles R. Spencer testified to the same effect and said a vertical shaft was more dangerous than a horizontal one. W. T. Howard, a mechanical engineer, and Benjamin Chambers, a machinist for over thirty years, also spoke of the dangers of such shafting. Mr. Chambers explained very fully and clearly such danger. He said there was a tendency to create a vacuum about the surface and that induces the surrounding atmosphere to rush towards the shaft to fill the vacuum created, and thus draw articles of light material around the shaft. In answer to the question about the danger to a female sweeping near it he said: " The very act of sweeping itself would necessitate a movement, moderately rapid, of her body and of her garments in passing and sweeping there; it would be moderately rapid, because that would be necessary to an industrious worker, and on nearing that shaft there would be imminent danger that she would be wrapped about it." Again he said, " all shafts are dangerous; but I regard a vertical shaft, passing up through the floor unprotected, as the most dangerous character of shaft." That witness also said that " where shafting stands vertically the method is to take some lumber and make about seven feet high two half barrels, as it were, or two pieces which when put together form a circle and that is put around the shaft and hooked together, and that can be readily removed for the purpose of oiling, etc."

Thus the witnesses of the plaintiff not only testified as to the danger of such shafting, but their evidence if accepted by the jury as correct was sufficient to justify them in believing that the defendant knew, or ought by the exercise of reasonable care to have known, that

it was not safe to thus leave it unprotected when the duties of the plaintiff (and possibly other inexperienced persons) required her to come in close proximity to it in the discharge of her duties. The superintendent of the factory, in answer to the question, " Had you ever known of anybody being injured by a smooth piece of shafting of that kind prior to this accident," replied, " Only from knowledge gleaned from the daily press " —thus admitting that he had knowledge from that public source that accidents did happen as the result of coming in contact with smooth shafting. Of course it would not be necessary under all circumstances to cover shafting. It may be so situated as to be safe and at least beyond the reach of inexperienced persons, but when shafting is so easily protected, as described by some of the witnesses, and when it is so situated that those inexperienced with its danger may be brought in contact with it in the discharge of their duties, there can be no reason why in a case of this kind the question whether the owner of the factory was guilty of the want of ordinary care, and whether it was an accident likely to occur, should not be submitted to the jury.

In *Pullman Palace Car Company* v. *Harkins,* 17 U. S. Appeals 22, this very question was considered. The Court said: " Revolving shafting, it appears, is attended with peculiar and latent danger. It seizes with fatal result the clothing of any person who unconsciously or incautiously comes in contact with it," and again it said that the evidence justified the statement of the Judge below that " all the witnesses agree in the opinion that shafting when in motion is very dangerous and that it should be boxed or covered or protected in some manner when in a place where persons are liable to come in contact with it." See also *Fairbank* v. *Haentzsche,* 73 Ill. 236; *Kinchlow* v. *Elevator Company,* 57 Kan. 375.

Thus we have in this case not only the fact that an accident did happen by the plaintiff coming in contact with a smooth revolving shaft and the evidence of a number of witnesses that such accidents are likely to happen if the shafting is not guarded, and the admission

of the superintendent of the factory that he had seen notices of them in the public press, but we find the question has already been before the Courts. The prayers as granted correctly announce the law and we will not discuss them further, but would affirm the judgment if it was properly before us as there was no other exception taken.

The verdict was rendered on the 4th day of April, 1898, and nothing was done in reference to the bill of exceptions until May 5, 1898, when an order was passed extending the time for signing and filing it. Section 170 of Art. 4 of the Code of Public Local Laws provides that " bills of exception may be signed in any cause pending in any of said Courts . . . at any time within thirty days from the rendition of the verdict of the jury or the findings of the Court upon the issues of fact in said cause, but not thereafter, unless the time for signing said bill of exceptions shall have been previously extended by order of Court or by consent of parties," etc.   There was no consent of the parties and the order extending the time of signing was passed after the expiration of thirty days from the rendition of the verdict, if Sundays be included.   It is contended, however, that Sundays should be excluded and that the statute means thirty working or judicial days.   But with that contention we cannot agree.   If there had been error in the rulings of the Court below, it might have seemed a hardship that the appellant should have lost its right of appeal by being one day too late, but neither this Court nor the Court below can disregard the plain language of the statute, and we have had occasion to speak more than once of the importance and necessity of having bills of exception signed promptly.   *Mayor, etc.* v. *Shipley,* 68 Md. 610; *Palmer* v. *Hughes,* 84 Md. 652.

" As a general rule where an act is required to be done in any certain number of days after or before a fixed time, Sunday is to be included in computing the number of days when it exceeds seven.   If it is less than seven, Sunday must be excluded."   *26 Ency. of Law* 10, and cases cited.   Of course that rule will not

apply when Sundays are expressly excluded by the statute or the intention of the Legislature to exclude them is manifest. The rule may be said to be somewhat arbitrary, yet it is not without a reason. When the Legislature fixes a limitation of time of more than seven days, it knows that the period must necessarily include one or more Sundays, and hence if it intends to exclude them it can and should say so, but when the period of time is less than seven days, it may or may not include a Sunday, depending upon the day of the week it is computed from. It is said in *Hanover Fire Ins. Co.* v. *Shrader*, 89 Texas 35 (30 L. R. A. 498), " The principle would seem to be that when but a few days are allowed in which to do the act, it is not to be presumed that the Legislature intended further to abbreviate it in effect by including a day ordinarily observed as a day of cessation from all ordinary business. For example when two days are designated it is not reasonable to hold that it was the purpose to include a Sunday when the practical effect of the ruling would be to reduce the time to one day only. But when weeks are included in the time allowed, the reason does not apply." In *State* v. *Harris*, 121 Mo. 445, cited by the appellant, this distinction is recognized. There it was held that Sunday would be excluded in the computation of the four days within which motions for new trials can be made, but in the same case where sixty days from August 9th had been allowed within which to sign a bill of exceptions, it was said that October 9th was too late—thus in effect holding that Sundays must be included. See also *State* v. *Seaton*, 106 Mo. 198; *Cunningham* v. *Mahan*, 112 Mass. 58; *Caupfield* v. *Cook*, 92 Mich. 626; *Hanover Fire Ins. Co.* v. *Shrader, supra.*

There are but few exceptions to the general rule laid down above. There are cases which may seem to be, but a careful examination of the most of them will show that when Sundays are excluded from the computation of time of more than a week, it is because of the language of the statute or because the days referred to are such as the Courts find exclude Sundays. We were cited

to the case of *Matthews* v. *State,* 92 Ala. 89, to show that
the constitutional limit of the sessions of the Legislature
in that State to fifty days excluded Sundays. But we do
not understand that to have been the construction that
has always been put on our constitutional provision that
the General Assembly may continue its sessions for a
period not longer than ninety days. There are many
instances in our statutes where the practice has always
been to include Sundays. Take, for example, section 8
of Art. 66 of the Code, which provides for twenty days'
notice of the time, place and terms of sale under powers
of sale contained in mortgages. If Sundays are to be
excluded, many sales have been made without legal
notice, as it has not been the practice to exclude them.
Section 6 of Art. 5 provides for appeals from orders or
decrees of the Orphans' Courts within thirty days, and
so section seven of that Article allows thirty days for
appeals under the insolvent laws. In none of those
cases has it been the practice, so far as we are aware, to
exclude Sundays in the computation of the time fixed
by the respective statutes, and other instances might
be given.

Nor do we think the language of the statute "*at any
time* within thirty days," etc., can make any difference.
That simply means at any time within the thirty days
that the Court can act, and whether or not a bill of ex-
ceptions can be signed on Sunday is not relevant to the
question in this case.

It will not be out of place and may prevent further
trouble to add that if the thirty days expire on Sunday,
it should still be counted and the next day should not
be allowed, as we can see no valid reason for excluding
the last Sunday and including the others. The general
rule, subject to but few exceptions, is that statutory
time of over seven days cannot be extended because the
last day falls on Sunday. 2 *Ency. of Pl. and Pr.* 256;
*Brown* v. *Vailes,* 16 Colo. 462; 14 L. R. A. 120; *Cooley*
v. *Cook,* 125 Mass. 406; *Ex Parte Dodge,* 7 Cowen 147;
*Johnson* v. *Meyers,* 54 Fed. Rep. 417.

As neither the bill of exceptions nor the order ex-

tending the time was signed within thirty days from the rendition of the verdict, the motion to dismiss the appeal must prevail.

*Appeal dismissed with costs.*

(Decided December 20th, 1898.)