# CHARLES W. R. YENTSCH, by Next Friend, *vs.* THE CHLORIDE OF SILVER DRY CELL BATTERY CO.

*Negligence—Dangerous Machinery—Master and Servant—Sufficiency of Evidence.*

Plaintiff, a youth seventeen years old, in defendant's employment, was injured while working on a sand paper wheel used for grinding down and shaping pieces of hard compressed paper. In an action to recover damages for the injury his evidence was that he was inexperienced in the use of the machine and had never been told of the danger in its use; that the space between the wheel and the table which supported the fibre while in his hands was too wide for safety; that the sand paper on the rim of the wheel was too narrow, so that air would get under the paper and form lumps; that the machine was without an appliance for immediately stopping it, and that the machine itself was not firmly fastened as it should have been. *Held*, that there was sufficient evidence of defendant's negligence to go to the jury.

Appeal from the Superior Court of Baltimore City (WRIGHT, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*C. Dodd McFarland* and *Emil Budnitz*, for the appellant.

*Carroll T. Bond* (with whom was *Wm. L. Marbury* and *Geo. W. Williams* on the brief), for the appellee.

FOWLER, J., delivered the opinion of the Court.

The plaintiff sues to recover damages for serious personal injury which he alleges was caused by defective or improperly constructed machinery used in the factory of the defendant company.

At the close of the plaintiff's testimony the Judge of the Superior Court of Baltimore City, at the instance of the defendant, took the case from the jury. There was accordingly a verdict and judgment in favor of the defendant, and the plain-

tiff has appealed.    It will, therefore, be necessary to examine the testimony, as contained in the record in order to determine, assuming it all to be true, whether there is any error in the action of the Court in taking the case from the jury.

It appears from the testimony that in the room of the factory of the defendant in which the p.aintiff was working there is among other machinery and appliances "a sand paper wheel" used for grinding down and shaping pieces of hard compressed paper which are used in fitting out electrical batteries.    This machine is composed of two large flat iron wheels on an axle three or four feet long, all supported about four feet up from the floor on two braces constructed much like the common saw-horse.    The wheels are about thirty six inches in diameter. The outer flat service of each wheel is covered by a large sheet of sand paper, held by an iron band or rim screwed on the outer edge, and which is removed to put in fresh sheets of paper from time to time.    The wheels are kept revolving at the rate of from 280 to 300 revolutions per minute or faster, by power transmitted through a belt which runs around a pulley or flat wheel on the axle, midway between the sand paper wheels.    This machinery is kept running continuously all day.    The fibre to be ground or shaped is pressed up against one of these revolving sand paper wheels until the desired amount of grinding has been accomplished."

It also appears from the testimony that the space between the wheel and the table or rest which supported the fibre while it was in the hands of the plaintiff was from a quarter to three eighths of an inch wide and that it ought not to have been more than one sixteenth of an inch in width; that the sand paper on the rim of the wheel was not wide enough and that air would get under the paper and form lumps which caught the fibre plate that was being ground and forced it between the table on which it rested and the wheel; that the frame or structure on which the wheel rested was not fixed tight and that it was without a loose pulley.

The plaintiff thus describes the accident.    "He was grinding fibre plates about six inches square and $\frac{3}{8}$ of an inch

thick   *   *   *   The wheel was going around.   There was a dangerous edge on the wheel because the paper was too small and came out of the hub on the outside that held the paper on   *   *   his hand slipped against the wheel and was pulled through.   He could not get it out." He called for assistance but because there was no loose pulley on the machine it could not be stopped at once.

The plaintiff was about 17 years old at the time of the accident.   His duties were to work all around the shop at everything.   He testifies that he had been grinding fibre-plates for five or six weeks for a short time each day, but that he was not experienced and never had any instructions ; that he was never told of the danger.; that he did not know that lumps would form on the sandpaper around the wheel.   He further testified that his injury was caused by the lump on the sandpaper striking the fibre-plate, carrying it and his hand into the space between the wheel and the table.   The witness, Clarence W. Smith, a tinner and plumber, testified that "he had worked at this machine about four months ; it was a dangerous machine   *   *   *.   The space between the wheel and the plate on which the fibre rested when being ground was about one-quarter of an inch or three-eighths, something like that.   If the plate had been nearer to the wheel the fibre would not have gone down and the plaintiff's hand would not have been carried through, there would not have been space enough.   But that was the way it was constructed." Another witness, Arthur Kretchmar, a machinist by trade, testified that he knew the construction of this machine of the defendant and worked there five years.   He reiterates the testimony of the other witnesses as to the space between the wheel and the table being too large for safety and said : "The fixture ought to be made so it fits tight and can't give at all, but for that the fibre-plate can't slip down.   That would have made it a safe machine." "This accident," he said, "could not have happened, if it had different fixtures."

In the present state of the record it is clear that the machine by means of which the plaintiff was injured was danger-

ous.    It was dangerous first, because the space between the wheel and the table was too wide; second, because, the sand paper used on the wheel was too narrow; third, because it was without an appliance called a loose pulley used for the immediate stopping of the wheel; and fourth, because the machine itself was not firmly fixed or as one of the witnesses said, "That fixture ought to be made so it fits tight and can't give at all."

It is equally clear from the testimony as it now stands for we are bound to assume it to be true, that the plaintiff never received any warning of the danger, nor did he know there was any.    He testifies that he was without experience and had never received any instructions.    While it may be conceded that on the whole testimony as now before us the inference might be drawn that the plaintiff had sufficient experience and knowledge to make him aware of the danger, yet that was a question for the jury and not for the Court.

It was conceded by counsel at the hearing that, as we said in *Levy* v. *Clark*, 90 Md. 147, the principles controlling such cases as this have been so thoroughly and definitely settled in Maryland that there ought to be no longer any necessity to discuss them.

It is the duty of the employer to furnish his employees safe machinery and appliances.    This duty, however, is not absolute, for as was said in *Wood* v. *Heiges*, 83 Md. 268, "the obligation of the employer extends no further than to require him to use that care which ordinary prudence and the exigencies of the situation demand in providing the servant with machinery or other instrumentalities *safe* for use by him."

And so in the same case it is stated as a well settled rule that an employee assumes such risks incident to the discharge of his duties as are open or obvious; but where, as the plaintiff in this case swears, the dangers and risks are such as he had no reason to believe he would have to encounter, the case is entirely different.    "No one" he says "told him what the danger was."    "He never had done the work before and was not experienced at it."    "His experience was not enough to

learn him of the danger to grind. Unless some one told him he would not know of it." * *. If the risks and dangers, therefore, are as testified by the plaintiff, hidden and such as he could not know unless he was informed of them, the defendant was bound to notify him, provided the defendant knew or by the exercise of ordinary care ought to have known of them. *Wood* v. *Heiges, supra* ; *Am. Tob. Co.* v. *Strickling,* 88 Md. 500; *Natl. Enam. Co.* v. *Brady,* 93 Md. 646. And whether the dangers in this case were such as the defendant knew or ought to have known was a question for the jury upon proper instructions and not for the Court.

It follows, therefore, from what we have said that there is legally sufficient evidence that the machine was dangerous, that no warning was given the plaintiff of the danger ; that the plaintiff was inexperienced and received no instructions. These facts being conceded, as they must be, as the case is now presented on a demurrer to the evidence, the defendant was guilty of negligence which directly caused the injury, and the case was improperly drawn from the jury.

*Judgment reversed. Cause remanded for new trial.*